# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**NICHOLAS A. FETTY, ET AL.**

**VERSUS**

**THE LOUISIANA STATE BOARD OF PRIVATE SECURITY EXAMINERS, ET AL.**

**CIVIL ACTION**

**NO. 18-517-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss Plaintiff[s'] Claims Pursuant to F.R.C.P. 12(B)(6)* (Doc. 34) filed by Defendants Jeff Landry, Louisiana Attorney General ("Landry"), and James LeBlanc, Secretary of the Louisiana Department of Public Safety & Corrections ("LeBlanc") (collectively, "Defendants"). Plaintiffs Nicholas A. Fetty ("Fetty") and Delta Tactical, LLC ("Delta Tactical" or "Delta") (collectively, "Plaintiffs") oppose the motion. (Doc. 40.) Defendants filed a reply. (Doc. 37.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted in part and denied as moot in part.

## I. Introduction

Plaintiff Fetty is the sole and managing member of Delta Tactical. (*Amended and Supplemental Complaint* ("*Amended Complaint*" or "*Am. Compl.*") ¶ 7, Doc. 27.) "Plaintiffs are engaged in the business of providing private security agents and security services" in Louisiana. (*Id.* ¶ 6.) This requires a license from the state. (*Id.*)

Pursuant to La. Rev. Stat. Ann. § 37:2371 *et seq.* (specifically § 37:2373), Louisiana established the Louisiana State Board of Private Security Examiners (the "Board") as an agency

within the Department of Public Safety and Corrections ("DPSC"). The Board requires private security agents and businesses to satisfy certain statutory and administrative requirements to obtain a license to engage in this practice. (*Id.* ¶ 6.)

LeBlanc is the Secretary of DPSC. (*Am. Compl.* ¶¶ 5(A), 6, Doc. 27.) Fabian P. Blache, III, ("Blache") "is responsible for supervising all employees of the Board, performing all administrative duties of the Board, supervising all inspectors, performing administrative inspections, and performing any duties as may be prescribed by the Board for the proper administration of the practice of private security agents and businesses." (*Id.* ¶ 5(B).) Members of the Board include Ritchie Rivers, Mark A. Williams, Marian H. Pierre, Wilbert Sanders, Jr., Ector Echegoyen, Maria V. Landry, Edward Robinson, Sr., Durell P. Pellegrin, and Misty Finchum (collectively, "the Board Members"). (*Id.* ¶ 5(C).)

On March 22, 2017, Plaintiffs were issued their license by the Board. (*Id.* ¶ 7.) This suit involves Plaintiffs' loss of that license. In short, Plaintiffs claim that Defendants have deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution and Article I, Sections 2 and 24 of the Louisiana Constitution of 1974. (*Id.* ¶ 6.)

LeBlanc, Landry, Blache, and the Board Members have all been named as defendants, but this ruling deals only with the instant motion to dismiss brought by Defendants Landry and LeBlanc.[1] Here, they seek dismissal of all claims they believe are brought against them, including (1) Plaintiffs' alleged attack on the constitutionality of the Board, Louisiana's Private Security Regulatory and Licensing Law, and its implementing regulations; (2) Plaintiffs' claims under 42 U.S.C. § 1983 against them in their individual and official capacities; (3) Plaintiffs' claims for emotional distress and punitive damages.

---

[1] The Board and the Board Members have filed separate motions to dismiss. (*See* Docs. 38 & 42.) The Court will address these motions in due course.

Preliminarily, the Court notes that it is very sympathetic to the claims brought by Plaintiffs. Though the *Amended Complaint* is inartful at times, Plaintiffs present allegations which, if true, are troubling.

But the key issue for the instant motion is whether Plaintiffs have stated viable claims against two specific Defendants, Landry and LeBlanc. In short, they have not. Plaintiffs concede that they do not attack the constitutionality of the Board or the relevant statutes and regulations. Plaintiffs also admit that they bring no official capacity claims against Defendants. Thus, these parts of the motion are denied as moot. However, Plaintiffs have failed to adequately state a claim against Defendants in their individual capacity under § 1983. Supervisor liability claims such as these require allegations of deliberate indifference, and here Plaintiffs have failed to adequately plead this against Landry or LeBlanc. Further, even if Plaintiffs had stated a viable claim against Defendants, neither Plaintiff can recover emotional distress damages; Delta cannot recover such damages because it is a LLC, and Fetty has not sufficiently alleged facts to show he is entitled to such damages. Lastly, Plaintiffs have failed to plead that Landry and LeBlanc engaged in any culpable conduct, much less the type of conduct required for punitive damages. Accordingly, Defendants' motion will be granted in these respects. But, Plaintiffs will be given leave to amend the operative complaint to cure the deficiencies therein.

## II. Relevant Factual Background

The following factual allegations are taken from Plaintiffs' *Amended Complaint* (Doc. 27). They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03 (5th Cir. 2014).

### A. The Notice and Cease and Desist Order

On October 16, 2017, the Board , through Blache, issued a "Notice of Revocation of Company License Number 0966" (the "Notice"), which "purportedly revoked" Plaintiffs' license. (*Am. Compl.* ¶ 8, Doc. 27.) The Notice to Delta allegedly said, "[T]his letter serves to notify you that pursuant to LSA – R.S. 37:3289(A)(9), the [Board] is revoking your company license to engage in the private security business in Louisiana . . ." (*Id.*)

Plaintiffs further allege in the *Amended Complaint* (sic throughout):

Additionally, on October 16, 2017, the [Board], purportedly acting through Blache, issued a "Cease and Desist Order" ordering that Delta and/or Fetty nor Delta Technical has been served with the Cease and Desist Order as required by LSA – R.S. 37:3293 and/or LAC, Title 46, Part LIX, Chapter 6, ¶ 601, and/or Chapter 9, § 901. . . . The Cease and Desist Order directed to Delta to "forthwith to CEASE & DESIST from engaging in the contract security business within the State of Louisiana."

(*Id.* ¶¶ 9–10.)

Plaintiffs claim that both the Notice and the Cease and Desist Order are illegal and unlawful. (*Id.*¶ 11.)  Plaintiffs specifically point to La. Rev. Stat. Ann. § 37:3288, which provides for a criminal penalty and revocation of these licenses for those committing "egregious acts" "after reasonable notice and opportunity for a fair and impartial hearing held in accordance with the Administrative Procedure Act." (*Am. Compl.* ¶ 12 (quoting La. Rev. Stat. Ann. § 37:3288), Doc. 27.)  Plaintiffs also quote provisions of the Louisiana Administrative Code.  The first provides that, "before revoking or suspending a license or registration card, or imposing fines or costs over $500, the board will afford the applicant an opportunity for a hearing after reasonable notice of not less than 15 days," except in certain inapplicable cases. (*Id.* ¶ 13 (quoting La. Admin. Code tit. 46, Pt LIX, § 601(A).)  The second regulation provides that any person who has violated a provision of La. Rev. Stat. Ann. § 37:3270 *et seq.* or other applicable rule is subject to a penalty or suspension

or revocation of his license, but this occurs "after reasonable notice and opportunity for a fair and impartial hearing held in accordance with the Administrative Procedure Act[.]" (*Id.* ¶ 14 (quoting La. Admin. Code tit. 46, Pt LIX, § 901).) Plaintiffs allege that, contrary to these laws, they were denied notice and an opportunity for a fair and impartial hearing before the Notice and Cease and Desist Order were issued. (*Id.* ¶¶ 15–16.)

### B. The Sham Hearing

On October 31, 2017, Plaintiffs requested a "fair an impartial hearing, . . . notwithstanding the requirement" that this should have happened anyway before the Board's actions. (*Am. Compl.* ¶ 17, Doc. 27.) In response, the Board "scheduled a purported fair and impartial hearing" on Plaintiffs' "license revocation for Thursday, January 25, 201[8]." (*Id.* ¶ 18.)

Delta had two employees—Dalton Miller and Colt Miller. (*Id.* ¶ 19.) According to Plaintiffs, since the revocation and Cease and Desist Order, "Colt had numerous and significant contact with Blache." (*Id.* ¶ 20.) The *Amended Complaint* alleges: "On information and belief, Colt made application to the [Board] for licensure, which was been approved (sic), pending compliance with the [Board's] insurance requirements." (*Id.* ¶ 21.)

On November 17, 2017, Colt and Dalton had a conversation, during which "Colt volunteered and told Dalton that he, [Colt,] had talked to Blache about the hearing requested by Fetty, that the hearing is not about whether or not Fetty loses his license, [and] that it would be about whether Fetty could ever get another license." (*Am. Compl.* ¶¶ 22–23, Doc. 27.) Colt also advised Dalton "that Blache had already talked to the . . . Board members, and that the Board had already decided that Fetty's license would be revoked, and that Fetty would not be getting his license back." (*Id.* ¶ 24.) According to Plaintiffs, "Colt further advised Dalton that the hearing

before the . . . Board was merely a formality intended, only, to satisfy the due process requirements." (*Id.* ¶ 25.)

On December 27, 2017, Plaintiffs filed a "Motion for *En Banc* Recusal of Members of the [Board] with supporting Memorandum." (*Id.* ¶ 26.)  Counsel for both Plaintiffs and the Board agreed to convert the January 25, 2018, hearing from one dealing with the revocation and order to a limited hearing on Plaintiffs' motion for recusal. (*Id.* ¶ 27.)   On January 25, 2018, the Board held this hearing. (*Id.* ¶ 28.) The motion was denied. (*Id.*)

### C.  Plaintiffs' Claims

Plaintiffs assert that Louisiana's Private Security Regulatory and Licensing Law, "as applied to Delta, currently prevents and continually prevents [Plaintiffs] from fulfilling contracts for services, [and] employing competent, experienced private security agents." (*Am. Compl.* ¶ 32, Doc. 27.)   All Defendants have caused Fetty to terminate Delta's most qualified agents and contracts and to spend considerable resources to obtain new ones. (*Id.* ¶ 33.)  Because of all Defendants, "Delta cannot effectively operate its business" and cannot "offer private security services to its customers." (*Id.* ¶ 34.)  Plaintiffs have also suffered a loss of goodwill. (*Id.* ¶ 35.)

Plaintiffs' first claim is a violation of procedural due process under the federal and state constitutions. (*Id.* ¶¶ 36–50.)  Plaintiffs complain about Blache's *ex parte* communications as well as the failure of the Board to provide a fair and impartial hearing. (*Id.* ¶¶ 45–48.)  According to Plaintiffs, they were entitled to an *en banc* recusal of the Board. (*Id.*)  Plaintiffs further assert that the Louisiana laws at issue, as applied, deprived Plaintiffs of their federal and state rights to procedural due process. (*Id.* ¶ 49.)  Plaintiffs claim continuing irreparable harm from Defendants' conduct and seek injunctive relief.

Plaintiffs also assert that Defendants violated Article I, Section 24 of the Louisiana Constitution. (*Am. Compl.* ¶ 52, Doc. 27.) This section provides: "The enumeration in this constitution of certain rights shall not deny or disparage other rights retained by the individual citizens of the state." La. Const. Art. I, § 24. Plaintiffs maintain that this provision "protects Plaintiffs' right to economic liberty—that is, their right to earn a living and conduct business free from unreasonable governmental interference." (*Am. Compl.* ¶ 53, Doc. 27.) Plaintiffs maintain that Louisiana's Private Security Regulatory Law, as applied, has "no real and substantial relationship to public health, safety, or welfare" and thus violated Article I, Section 24. (*Id.* ¶ 57.) According to Plaintiffs, on September 22, 2017, Blache drafted a letter to Plaintiffs alleging that "Fetty had stipulated to an administrative penalty and fine in the amount of . . . $5,000.00[] . . . , for the same alleged violations which formed the basis for the revocation and cease and desist order." (*Id.* ¶ 58.) If Plaintiffs had paid this fine, they would have been allowed to continue to operate. (*Id.* ¶ 59.) Meanwhile, Plaintiffs claim that "any and all necessary corrective action identified in Blache's writing had been completed." (*Id.* ¶ 60.) Plaintiffs say that the Louisiana laws at issue, as applied, advance no legitimate governmental interest and are arbitrary and capricious. (*Id.* ¶¶ 61–62.) Again, Plaintiffs seek injunctive relief. (*Id.* ¶ 64.)

Plaintiffs pray for the following: (a) a declaration that La. Rev. Stat. §§ 37:3270 *et seq.* and its implementing regulations are unconstitutional "when applied to Plaintiffs' practice of providing private security agents and private security services"; (b) a permanent injunction prohibiting Defendants from enforcing Louisiana's Private Security Regulatory Law and regulations against Plaintiffs' practice and services; (c) an award of damages for Defendants' violations of the state and federal constitutions; and (d) "all other relief to which Plaintiffs may show themselves

entitled." (*Am. Compl.*, Doc. 27 at 17.) Plaintiffs also seek a number of separate items of damages, including:

> Pecuniary losses; loss of good will; mental anguish and/or mental pain, humiliation, embarrassment, inconvenience, emotional distress, loss of enjoyment of life, and other non-pecuniary losses – past, present and future; punitive damages in the amount of $2,315,000.00; any other damages which may be proved at a trial on the merits, and reasonable attorney's fees and costs of the present action.

(*Id.* at 18.)

### D. Claims against LeBlanc

Relevant here, Plaintiffs' allegations against LeBlanc are contained in a single paragraph. Specifically, Plaintiffs assert:

> At all times pertinent hereto, Secretary LeBlanc was negligent in supervising and properly training the defendants, Blache and the members of the Board of the LSBPSE in the proper administration of the LSBPSE. Secretary LeBlanc failed to properly instruct or train Blache and the members of the Board of the LSBPSE, particularly in the grounds of the operations of the Board in the context of the due process requirements of the Fourteenth Amendment to United States Constitution and Article I, Section 24 of the Louisiana Constitution.

(*Am. Compl.* ¶ 65.)

### III. Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant

evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

## IV.    Discussion

### A.  Constitutionality of the Board, Statutes, and Regulations

#### 1. Parties' Arguments

According to Defendants, "Plaintiffs claim that the state laws which authorize the Board to administer and levy penalties and fines are unconstitutional and arbitrary and capricious." Defendants dispute this, arguing that these state laws are constitutional and were validly applied. (Doc. 34-2 at 4–6.)

Plaintiffs respond that much of what Defendants say about the Board and its authority is accurate.  However, Plaintiffs assert: "Nowhere in their Complaint, did, (sic) the Complainants question or challenge the constitutionality of the Louisiana Private Security, Regulatory and Licensing Law, La. Rev. Stat. Ann. § 37:3270 *et seq*., nor did they question the constitutionality of Louisiana Administrative Code Title 46, Part LIX." (Doc. 36 at 5.)  Rather, Plaintiffs seek: (1) "to vindicate and recognize Plaintiffs' right to economic liberty" under the federal and state constitutions; (2) "to establish and seeks (sic) a Judgment declaring that the defendants violated and deprived Plaintiffs of certain rights and privileges accorded and guaranteed" by the due process provisions of the federal and state constitutions; and (3) damages. (*Id.*)  Plaintiffs then argue why they stated a claim for a due process violation.

Defendants reply that, even assuming the truth of Plaintiffs' allegations and arguments, Plaintiffs have still failed to state any cognizable claim against them.  "There are no facts which support the claim that Landry or LeBlanc had any input or participation in the Board's actions as to Plaintiffs.  Even if Plaintiffs could prove that the Board violated their due process rights in some way, it does not automatically follow that Landry and LeBlanc have violated Plaintiffs' rights." (Doc. 37 at 1–2.)

## 2. Analysis of Constitutionality

In their opposition, Plaintiffs plainly concede that they are not attacking the constitutionality of the Board, its statutes, or its regulations. While this is not clear from the *Amended Complaint*, Plaintiffs' concession means that Defendants' motion to dismiss on this issue should be denied as moot.

### B. Section 1983 Claims

#### 1. Official Capacity Claims

Defendants next move to dismiss any official capacity claim made under 42 U.S.C. § 1983 against them on two grounds: (1) such claims are essentially claims against the state, and the state is not a "person" for purposes of § 1983, and (2) Plaintiffs have failed to allege an official policy or custom. Plaintiffs reply that "[t]heir suit is against . . . LeBlanc, . . . Blache, . . . and members of the Board, all in each of their individual capacities." (Doc. 36 at 8.) Further, Plaintiffs say they sued Landry "out of an abundance of caution . . . and have made service of a summons upon him." (*Id.*) In reply, Defendants simply urge that there is no basis for an official capacity claim. Again, given Plaintiffs' concession, they have no official capacity claims against Defendants, and the Court will deny their motion as moot.

#### 2. Individual Capacity Claims

##### a. Parties' Arguments

Defendants next seek dismissal of Plaintiffs' individual capacity claims on two main grounds. First, Defendants contend that Plaintiffs have failed to allege any specific conduct by them which violated their constitutional rights. All of the alleged misconduct at issue was done by the Board, not by Landry and LeBlanc. Second, Defendants are entitled to qualified immunity

because Plaintiffs have not alleged they violated the Constitution and have not shown that all reasonable officers in their positions would have known that their conduct was unlawful.

Plaintiffs reply:

LeBlanc failed to properly instruct or train Blache and the members of the Board . . ., particularly in the grounds of the operations of the Board in the context of the due process requirements of the Fourteenth Amendment to United States Constitution and Article I, Section 24 of the Louisiana Constitution.

(Doc. 36 at 7.) Plaintiffs say that their "claims . . . against . . . LeBlanc lie in negligence[.]" (*Id.*) As to qualified immunity, Plaintiffs assert that these Defendants "raise questions of fact as opposed to questions of law" and that Plaintiffs "clearly state a cause of action under federal law, particularly . . . § 1983, under the Louisiana Constitution and Louisiana 'tort' law." (Doc. 36 at 9.)

Defendants reply:

Plaintiffs failed to allege with any specificity that LeBlanc had any duty to train the Board on due process requirements, failed to perform any such duty, or developed a custom or policy with deliberate indifference to Plaintiffs' constitutional rights. There is <u>no</u> allegation that Landry did anything to violate Plaintiff[s'] constitutional rights.

(Doc. 37 at 2 (emphasis in original).) Defendants again argue that there is no personal involvement by them in the alleged constitutional violations, so the claims against them must be dismissed.

### b. Applicable Law

### i. Qualified Immunity

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034 (1987)). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2)

whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

" 'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks in *White* omitted)). " 'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks in *White* omitted)). " 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Id.*, 138 S. Ct. at 1153 (quoting *White*, 137 S. Ct. at 552 (internal quotation marks in *White* omitted)). "But . . . [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).

### ii. Procedural Due Process

"To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then show that a governmental action resulted in a deprivation of the interest." *Richmond v. Coastal Bend Coll. Dist.*, 883 F. Supp. 2d 705, 713 (S.D. Tex. 2012) (citing *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)). "The essential elements of . . . procedural due process under the Constitution are notice and an

opportunity to respond." *Id.* (citing *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003)).

As to the opportunity to respond, "[d]epending on the circumstances and the interests at stake, a fairly extensive evidentiary hearing may be constitutionally required before a legitimate claim of entitlement may be terminated." *Id.* (citing *Brock v. Roadway Exp., Inc.*, 481 U.S. 252, 261, 107 S. Ct. 1740, 1747, 95 L. Ed. 2d 239 (1987)). "In other circumstances, however, the Supreme Court has upheld procedures affording less than a full evidentiary hearing if some kind of hearing ensuring an effective initial check against mistaken decisions is provided before the deprivation occurs and a prompt opportunity for complete administrative and judicial review is available." *Id.* (citing *Brock*, 481 U.S. at 261–62, 107 S. Ct. at 1747).

### iii.    Supervisor Liability

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Simon v. LeBlanc*, 694 F. App'x 260, 261 (5th Cir. 2017) (per curiam) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). " 'A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.' " *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "When, as here, a plaintiff alleges a failure to train or supervise, 'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.' " *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)); *see*

*also Porter*, 659 F.3d at 446 (" 'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.' " (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations and emphasis in *Gates*))).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis*, 406 F.3d at 381 (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). " 'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (internal quotation marks and citation omitted in *Smith*)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). " 'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.' " *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)). " 'To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is "obvious and obviously likely to result in a constitutional violation." ' " *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)).

However, to demonstrate deliberate indifference, a "claimant need not show that a[n] . . . official acted or failed to act believing that harm actually would befall [a plaintiff]; it is enough

that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *See Farmer v. Brennan*, 511 U.S. 825, 842, 114 S. Ct. 1970, 1981, 128 L. Ed. 2d 811 (1994) (describing deliberate indifference in Eighth Amendment context for inmate failure-to-protect claims). Further, "[w]hether a[n] . . . official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a[n] . . . official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (citing 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.7, p. 335 (1986) ("[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of")). Thus, in failure-to-train cases like this case, " '[i]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,' a supervisor might reasonably be found to be deliberately indifferent." *Estate of Davis*, 406 F.3d at 381–82 (citing *City of Canton*, 489 U.S. at 390, 109 S. Ct. 1197).

### 3. Analysis

Considering the law and facts alleged, the Court will grant Defendants' motion. Plaintiffs have failed to allege any personal participation by LeBlanc or Landry in any constitutional violation. They were neither responsible for the alleged denial of due process, nor did they implement any unconstitutional policies which caused any constitutional violations. Without more, Plaintiffs' individual capacity claims against Landry and LeBlanc fail.

Further, Plaintiffs have failed to allege deliberate indifference, and their opposition confirms this. Plaintiffs freely admit that they sued Landry only out of an abundance of caution

(Doc. 36 at 8), and he is wholly absent from the *Amended Complaint*. As to LeBlanc, Plaintiffs argue that he was negligent in failing to train the Board, but, as amply demonstrated above, a failure-to-train claim involves deliberate indifference, which requires more than mere negligence. There is no allegation that LeBlanc was aware of a substantial risk of harm yet disregarded that risk, and there is no plausible basis in the *Amended Complaint* for arguing that the risk was obvious to him.

Considering all of this, Landry and LeBlanc's motion is granted, and Plaintiffs' § 1983 claims against Defendants are dismissed.[2]

### C. Damages

### 1. Parties' Arguments

Defendants next seek dismissal of Plaintiffs' emotional distress and punitive damages claims. As to the former, Defendants argue that a corporation such as Delta cannot incur damages for mental anguish. Moreover, because they have failed to allege that Fetty suffered any emotional distress, Plaintiffs have failed to satisfy the elements of an intentional infliction of emotional distress claim. As to punitive damages, Plaintiffs have failed to plead that Defendants acted in reckless disregard for their rights or with evil intent; indeed, the *Amended Complaint* specifically

---

[2] The Court notes in passing that, though Defendants did not seek dismissal of Plaintiffs' claim for negligent failure to train under state law, this claim is also inadequate. Again, Plaintiffs allege:

> At all times pertinent hereto, Secretary LeBlanc was negligent in supervising and properly training the defendants, Blache and the members of the Board of the LSBPSE in the proper administration of the LSBPSE. Secretary LeBlanc failed to properly instruct or train Blache and the members of the Board of the LSBPSE, particularly in the grounds of the operations of the Board in the context of the due process requirements of the Fourteenth Amendment to United States Constitution and Article I, Section 24 of the Louisiana Constitution.

(*Am. Compl.* ¶ 65, Doc. 27.) Here, the *Amended Complaint* is conclusory, as Plaintiffs do not allege any *facts* demonstrating that LeBlanc or Landry failed to adequately train or instruct the Board. Plaintiffs will be given leave to amend their complaint, so they should cure these deficiencies as well, if they can. *See*, *infra*.

says that the Board "found itself in a quandary through no fault of its own." (Doc. 34-2 (citing *Am. Compl.* ¶ 45, Doc. 27).)

In response, Plaintiffs merely say that Defendants have "raise[d] questions of fact as opposed to questions of law" (Doc. 36 at 9) and maintain that they have stated a cause of action.

In reply, Defendants emphasize that Plaintiffs have failed to oppose the substance of their arguments on damages. Defendants then largely reiterate their earlier positions.

## 2. Analysis

The Court will grant Defendants' motion to dismiss these damage claims. However, the Court will make two preliminary notes.

First, the Court has dismissed all claims against Defendants, so it need not address the damage issues. However, because the Court will give Plaintiffs leave to amend their complaint to cure the above deficiencies, *see, infra*, the Court will also address the damage issues so that Plaintiffs can correct these problems as well, if they can do so in good faith.

Second, the Court agrees with Defendants that Plaintiffs have failed to substantively oppose dismissal of these damage claims. On that ground alone, the Court could grant Defendants' motion. *See JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (finding that operative complaint could be dismissed because plaintiff failed to respond to the substance of defendant's arguments (numerous citations omitted)); *Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, No. 17-1741, -- F. Supp. 3d --- , 2019 WL 1938799, at *7 (M.D. La. May 1, 2019) (deGravelles, J.) (reaching same result as to a particular issue (citing, *inter alia*, *JMCB*)).

But, putting this aside, the same result is warranted for several reasons. Landry and LeBlanc are correct that corporations cannot sustain damages for mental anguish, *see*

*Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, No. 07-7965, 2009 WL 86671, at *3 (E.D. La. Jan. 13, 2009) (citing *AT & T Corp. v. Columbia Gulf Transmission Co.*, No. 07-1544, 2008 WL 4585439 at *3 (W.D. La. Sept. 15, 2008)), so this claim must fall.

Moreover, Fetty's claim for emotional distress damages also fails, though not for the reasons Defendants argue. Defendants maintain that Fetty has failed to state a claim for intentional infliction of emotional distress, but Plaintiffs correctly point out that Fetty never made such a claim. Rather, this claim fails because it lacks adequate factual allegations. While plaintiffs can recover emotional distress damages for a procedural due process violation under § 1983, *see Carey v. Piphus*, 435 U.S. 247, 264, 98 S. Ct. 1042, 1052, 55 L. Ed. 2d 252 (1978), [3] and for negligent infliction of emotional distress under state law, *see, e.g., Barrino v. E. Baton Rouge Par. Sch. Bd.*, 96-1824 (La. App. 1 Cir. 6/20/97); 697 So. 2d 27, 33-34,[4] here Plaintiffs have failed to allege any facts (1) that Fetty actually sustained emotional distress damages, and (2) that Landry and LeBlanc were responsible for same. Without more, Plaintiffs have failed to state a viable claim for these damages against Defendants.

The same result is warranted on the punitive damages claims. "Punitive damages may be awarded [under § 1983] only when the defendant's individual conduct 'is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights.' "

---

[3] As the Supreme Court said in *Carey*: "In sum, then, although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused." *Id.*, 435 U.S. at 264, 98 S. Ct. at 1052. Because such damages are not presumed, if a plaintiff fails to adequately prove actual damages from a denial of procedural due process at trial, he will only be entitled to recover nominal damages. *See id.*, 435 U.S. at 266–67, 98 S. Ct. at 1054.

[4] As *Barrino* explained: "It is well established in [Louisiana] jurisprudence that a claim for negligent infliction of emotional distress unaccompanied by physical injury is viable" under La. Civ. Code art. 2315, though "this recovery has been limited to cases involving the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Id.*, 697 So. 2d at 33–34 (citations and quotations omitted).

*Bouchereau v. Gautreaux*, No. 14-805, 2015 WL 5321285, at *13 (M.D. La. Sept. 11, 2015) (deGravelles, J.) (quoting *Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (citation omitted)). But, here, Plaintiffs have not alleged that Landry or LeBlanc have engaged in any conduct rising to that level. As to the state law claims, "[p]unitive damages are not allowed under Louisiana law in absence of a specific statutory provision." *Golden v. Columbia Cas. Co*., No. 13-547, 2015 WL 3650790, at *9 (M.D. La. June 11, 2015) (deGravelles, J.) (citing *Hoffpauir v. Columbia Cas. Co*., No. 12–403, 2013 WL 5934699, at *14 (M.D. La. Nov. 5, 2013) (citing *Zaffuto v. City of Hammond*, 308 F.3d 485, 491 (5th Cir. 2002))). Here, Plaintiffs have identified no provision of Louisiana law that would support an award of punitive damages against these Defendants.

As a result, the Court will grant Defendants' motion with respect to damages. Plaintiffs' claims for emotional distress and punitive damages are dismissed.

### D. Leave to Amend

Lastly, the Court must address whether it will grant leave to amend the operative complaint to cure the above deficiencies. "[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. . . . A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2019).

Here, Plaintiffs already amended the operative complaint once, and they did not formally request leave to amend. Nevertheless, because Plaintiffs did not amend their complaint in response to a ruling by this Court, and because of the above "wise judicial practice," the Court will grant Plaintiffs one final opportunity to amend their complaint to state viable claims against Defendants LeBlanc and Landry. *See JMCB*, 336 F. Supp. 3d at 641–42 (granting leave to amend, despite strong argument against this by defendant, when amendment to plaintiff's complaint did not come in response to a ruling from the court).

## V.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Plaintiff[s'] Claims Pursuant to F.R.C.P. 12(B)(6)* (Doc. 34) filed by Defendants Jeff Landry, Louisiana Attorney General, and James LeBlanc, Secretary of the Louisiana Department of Public Safety & Corrections, is **GRANTED IN PART** and **DENIED IN PART.**

With respect to Defendants' arguments about (1) the constitutionality of the Board, the Louisiana Private Security, Regulatory and Licensing Law, La. Rev. Stat. Ann. § 37:3270 *et seq.*,

and its regulations, Louisiana Administrative Code Title 46, Part LIX, and (2) Plaintiffs' claims under 42 U.S.C. § 1983 against Defendants in their official capacities, the instant motion is **DENIED AS MOOT**.

In all other respects, Defendants' motion is **GRANTED**, and Plaintiffs' claims against these Defendants are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs shall have twenty-eight (28) days in which to amend their operative complaint to cure the above deficiencies. This twenty-eight (28) day period shall commence when the Court issues rulings on the other pending motions to dismiss (Docs. 38 & 42). If Plaintiffs fail to do so, their claims against these Defendants will be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on July 8, 2019.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**