# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**NICHOLAS A. FETTY, ET AL.**

**CIVIL ACTION**

**VERSUS**

**NO. 18-517-JWD-EWD**

**THE LOUISIANA STATE BOARD OF PRIVATE SECURITY EXAMINERS, ET AL.**

## RULING AND ORDER

This matter comes before the Court on *Defendant's Motion to Dismiss Pursuant to Rule 4(m), 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure* (Doc. 38) filed by Defendant Fabian Blache ("Defendant" or "Blache"). Plaintiffs Nicholas A. Fetty ("Fetty") and Delta Tactical, LLC ("Delta Tactical" or "Delta") (collectively, "Plaintiffs"), oppose the motion. (Doc. 40.) No reply was filed. Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is granted in part and denied in part.

## I. Relevant Factual Background

### A. Introduction

The following factual allegations are taken from Plaintiffs' *Amended and Supplemental Complaint* ("*Amended Complaint*" or "*Am. Compl.*") (Doc. 27). They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff Fetty is the sole and managing member of Delta Tactical. (*Am. Compl.* ¶ 7, Doc. 27.) "Plaintiffs are engaged in the business of providing private security agents and security services" in Louisiana. (*Id.* ¶ 6.) This requires a license from the state. (*Id.*)

Pursuant to La. Rev. Stat. Ann. § 37:3271 *et seq.* (specifically § 37:2373), Louisiana established the Louisiana State Board of Private Security Examiners (the "Board") as an agency within the Department of Public Safety and Corrections ("DPSC"). The Board requires private security agents and businesses to satisfy certain statutory and administrative requirements to obtain a license to engage in this practice. (*Id.* ¶ 6.)

Blache "is responsible for supervising all employees of the Board, performing all administrative duties of the Board, supervising all inspectors, performing administrative inspections, and performing any duties as may be prescribed by the Board for the proper administration of the practice of private security agents and businesses." (*Id.* ¶ 5(B).) Members of the Board include Ritchie Rivers, Mark A. Williams, Marian H. Pierre, Wilbert Sanders, Jr., Ector Echegoyen, Maria V. Landry, Edward Robinson, Sr., Durell P. Pellegrin, and Misty Finchum (collectively, "the Board Members"). (*Id.* ¶ 5(C).) LeBlanc is the Secretary of DPSC. (*Id.* ¶¶ 5(A), 6.) Blache, the Board Members, LeBlanc, and Landry have all been named as defendants, but this ruling deals only with the instant motion to dismiss brought by Blache.[1] (Doc. 38.)

According to the *Amended Complaint*, "Fetty and/or Delta Tactical is Licensee of the [the Board] having been issued license number 0966 thereby on March 22, 2017." (*Am. Compl.* ¶ 7, Doc. 27.) This suit involves Plaintiffs' loss of that license. In short, Plaintiffs claim that Defendants have deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution and Article I, Sections 2 and 24 of the Louisiana Constitution of 1974. (*Id.* ¶ 6.)

---

[1] The Board Members have filed a separate motion to dismiss. (*See* Doc. 42.) The Court will address that motion in due course.

Additionally, Landry and LeBlanc previously filed a motion to dismiss (Doc. 34) which this Court granted in part and denied as moot in part. (Doc. 44.) The Court gave Plaintiffs twenty-eight (28) days from when the Court issued rulings on the pending motions to dismiss (including the instant motion) in which to file a second amended complaint to cure any deficiencies. Thus, that deadline has not yet commenced.

### B. The Notice and Cease and Desist Order

On October 16, 2017, the Board, through Blache, issued a "Notice of Revocation of Company License Number 0966" (the "Notice"), which "purportedly revoked" Plaintiffs' license. (*Id.* ¶ 8.) The Notice to Delta allegedly said, "[T]his letter serves to notify you that pursuant to LSA – R.S. 37:3289(A)(9), the [Board] is revoking your company license to engage in the private security business in Louisiana . . ." (*Id.*)

Plaintiffs further allege in the *Amended Complaint* (sic throughout):

> Additionally, on October 16, 2017, the [Board], purportedly acting through Blache, issued a "Cease and Desist Order" ordering that Delta and/or Fetty nor Delta Technical has been served with the Cease and Desist Order as required by LSA – R.S. 37:3293 and/or LAC, Title 46, Part LIX, Chapter 6, ¶ 601, and/or Chapter 9, § 901. . . . The Cease and Desist Order directed to Delta to "forthwith to CEASE & DESIST from engaging in the contract security business within the State of Louisiana."

(*Id.* ¶¶ 9–10.)

Plaintiffs claim that both the Notice and the Cease and Desist Order are illegal and unlawful. (*Id.* ¶ 11.) Plaintiffs specifically point to La. Rev. Stat. Ann. § 37:3288, which provides for a criminal penalty and revocation of these licenses for those committing "egregious acts" "after reasonable notice and opportunity for a fair and impartial hearing held in accordance with the Administrative Procedure Act." (*Am. Compl.* ¶ 12 (quoting La. Rev. Stat. Ann. § 37:3288), Doc. 27.) Plaintiffs also quote provisions of the Louisiana Administrative Code. The first provides that, "before revoking or suspending a license or registration card, or imposing fines or costs over $500, the board will afford the applicant an opportunity for a hearing after reasonable notice of not less than 15 days," except in certain inapplicable cases. (*Id.* ¶ 13 (quoting La. Admin. Code tit. 46, Pt LIX, § 601(A)).) The second regulation provides that any person who has violated a provision of La. Rev. Stat. Ann. § 37:3270 *et seq.* or other applicable rule is subject to a penalty or suspension

or revocation of his license, but this occurs "after reasonable notice and opportunity for a fair and impartial hearing held in accordance with the Administrative Procedure Act[.]" (*Id.* ¶ 14 (quoting La. Admin. Code tit. 46, Pt LIX, § 901).) Plaintiffs allege that, contrary to these laws, they were both denied notice and an opportunity for a fair and impartial hearing before the Notice and Cease and Desist Order were issued. (*Id.* ¶¶ 15–16.)

### C. The Sham Hearing

On October 31, 2017, Plaintiffs requested a "fair and impartial hearing, . . . notwithstanding the requirement" that this should have happened anyway before the Board's actions. (*Am. Compl.* ¶ 17, Doc. 27.) In response, the Board "scheduled a purported fair and impartial hearing" on Plaintiffs' "license revocation for Thursday, January 25, 201[8]." (*Id.* ¶ 18.)

Delta had two employees—Dalton Miller and Colt Miller. (*Id.* ¶ 19.) According to Plaintiffs, since the revocation and Cease and Desist Order, "Colt had numerous and significant contact with Blache." (*Id.* ¶ 20.) The *Amended Complaint* alleges: "On information and belief, Colt made application to the [Board] for licensure, which was been approved (sic), pending compliance with the [Board's] insurance requirements." (*Id.* ¶ 21.)

On November 17, 2017, Colt and Dalton had a conversation, during which "Colt volunteered and told Dalton that he, [Colt,] had talked to Blache about the hearing requested by Fetty, that the hearing is not about whether or not Fetty loses his license, [and] that it would be about whether Fetty could ever get another license." (*Am. Compl.* ¶¶ 22–23, Doc. 27.) Colt also advised Dalton "that Blache had already talked to the . . . Board members, and that the Board had already decided that Fetty's license would be revoked, and that Fetty would not be getting his license back." (*Id.* ¶ 24.) According to Plaintiffs, "Colt further advised Dalton that the hearing

before the . . . Board was merely a formality intended, only, to satisfy the due process requirements." (*Id.* ¶ 25.)

On December 27, 2017, Plaintiffs filed a "Motion for *En Banc* Recusal of Members of the [Board] with supporting Memorandum." (*Id.* ¶ 26.) Counsel for both Plaintiffs and the Board agreed to convert the January 25, 2018, hearing from one dealing with the revocation and order to a limited hearing on Plaintiffs' motion for recusal. (*Id.* ¶ 27.) On January 25, 2018, the Board held this hearing. (*Id.* ¶ 28.) The motion was denied. (*Id.*)

### D. Plaintiffs' Claims

Plaintiffs assert that Louisiana's Private Security Regulatory and Licensing Law, "as applied to Delta, currently prevents and continually prevents [Plaintiffs] from fulfilling contracts for services, [and] employing competent, experienced private security agents." (*Am. Compl.* ¶ 32, Doc. 27.) All Defendants have caused Fetty to terminate Delta's most qualified agents and contracts and to spend considerable resources to obtain new ones. (*Id.* ¶ 33.) Because of all Defendants, "Delta cannot effectively operate its business" and cannot "offer private security services to its customers." (*Id.* ¶ 34.) Delta has also suffered a loss of goodwill with its customers. (*Id.* ¶ 35.)

Plaintiffs' first claim is a violation of procedural due process under the federal and state constitutions. (*Id.* ¶¶ 36–50.) Plaintiffs complain about Blache's *ex parte* communications as well as the failure of the Board to provide a fair and impartial hearing. (*Id.* ¶¶ 45–48.) According to Plaintiffs, they were entitled to an *en banc* recusal of the Board. (*Id.*) Plaintiffs further assert that the Louisiana laws at issue, as applied, deprived Plaintiffs of their federal and state rights to procedural due process. (*Id.* ¶ 49.) Plaintiffs claim continuing irreparable harm from Defendants' conduct and seek injunctive relief.

Plaintiffs also assert that Defendants violated Article I, Section 24 of the Louisiana Constitution. (*Am. Compl.* ¶ 52, Doc. 27.)  This section provides: "The enumeration in this constitution of certain rights shall not deny or disparage other rights retained by the individual citizens of the state." La. Const. Art. I, § 24.  Plaintiffs maintain that this provision "protects Plaintiffs' right to economic liberty—that is, their right to earn a living and conduct business free from unreasonable governmental interference." (*Am. Compl.* ¶ 53, Doc. 27.)  Plaintiffs maintain that Louisiana's Private Security Regulatory Law, as applied, has "no real and substantial relationship to public health, safety, or welfare" and thus violated Article I, Section 24. (*Id.* ¶ 57.) According to Plaintiffs, on September 22, 2017, Blache drafted a letter to Plaintiffs alleging that "Fetty had stipulated to an administrative penalty and fine in the amount of . . . $5,000.00[] . . . , for the same alleged violations which formed the basis for the revocation and cease and desist order." (*Id.* ¶ 58.)  If Plaintiffs had paid this fine, they would have been allowed to continue to operate. (*Id.* ¶ 59.)  Meanwhile, Plaintiffs claim that "any and all necessary corrective action identified in Blache's writing had been completed." (*Id.* ¶ 60.)  Plaintiffs say that the Louisiana laws at issue, as applied, advance no legitimate governmental interest and are arbitrary and capricious. (*Id.* ¶¶ 61–62.)  Again, Plaintiffs seek injunctive relief. (*Id.* ¶ 64.)

Plaintiffs pray for the following: (a) a declaration that La. Rev. Stat. §§ 37:3270 *et seq.* and its implementing regulations are unconstitutional "when applied to Plaintiffs' practice of providing private security agents and private security services"; (b) a permanent injunction prohibiting Defendants from enforcing Louisiana's Private Security Regulatory Law and regulations against Plaintiffs' practice and services; (c) an award of damages for Defendants' violations of the state and federal constitutions; and (d) "all other relief to which Plaintiffs may show themselves

entitled." (*Am. Compl.*, Doc. 27 at 17.)  Plaintiffs also seek a number of separate items of damages, including:

> Pecuniary losses; loss of good will; mental anguish and/or mental pain, humiliation, embarrassment, inconvenience, emotional distress, loss of enjoyment of life, and other non-pecuniary losses – past, present and future; punitive damages in the amount of $2,315,000.00; any other damages which may be proved at a trial on the merits, and reasonable attorney's fees and costs of the present action.

(*Id.* at 18.)

### E.  The Instant Motion

Here, Blache seeks dismissal of the following claims: (1) the claims under 28 U.S.C. § 1983 by Fetty against him in his individual capacity; (2) the § 1983 claims by Delta against him in his individual capacity; (3) Plaintiffs' claims for emotional distress; and (4) Plaintiffs' claims for punitive damages.  Defendant Blache also moves to dismiss the *Amended Complaint* for failure to make timely service.

## II.  Relevant Standards

### A.  Rule 12(b)(2) & 12(b)(5)

Federal Rule of Civil Procedure ("Rule") 12(b)(5) allows a party to move to dismiss for insufficient service of process. The party making service has the burden of demonstrating its validity when an objection to service is made. *Holly v. Metro. Transit Authority*, 213 F. App'x 343 (5th Cir. 2007) (citing *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). The district court has broad discretion in determining whether to dismiss an action for ineffective service of process. *George v. U.S. Dep't of Labor, Occupational Safety & Health Admin.*, 788 F.2d 1115, 1116 (5th Cir. 1986).

Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court

bears the burden of proving that jurisdiction exists." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Buillion v. Gillepsie*, 895 F.2d 213, 217 (5th Cir. 1990) (citations omitted)). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id.* ("Proof by preponderance of the evidence is not required."). However, in assessing whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.' " *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)); *cf.* Fed. R. Civ. P. 12(d) (listing only motions under Rule 12(b)(6) and 12(c) as requiring conversion to summary judgment if evaluated on matters outside the pleadings).

Proper service of process is an essential part of the procedure for establishing and proving personal jurisdiction. *Carimi*, 959 F.2d at 1349; *see also Delta S.S. Lines, Inc. v. Albano*, 768 F.2d 728 (5th Cir. 1985). In the absence of valid service of process, proceedings against a party are void. *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981).

**B. Rule 12(b)(6)**

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a), the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia*, *S.A. De* C.V., No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

## III. Discussion

### A. Failure to Serve

#### 1. Parties' Arguments

Defendant argues that the original *Complaint* asserted a substantive due process claim. (Doc. 1 at 11.) However, the *Amended Complaint* asserted a procedural due process claim. (Doc. 27 at 10.) This is, according to Defendant, problematic because Blache was never served with the *Amended Complaint* within 90 days as required by Rule 5(a). As a result, under Rule 4(m), the Court must either dismiss the action without prejudice or order that service be made within a specified time. Defendant urges that Plaintiffs must make some showing of good faith and that errors or mistake of counsel do not suffice. Here, there is no reason, much less a good reason, for the failure to serve, so the Plaintiffs' claims are subject to dismissal.

Plaintiffs reply that Blache was personally served with the original *Complaint* on September 5, 2018, and that proof of service was filed on September 6, 2018. (Doc. 40 at 7 (citing Doc. 10).) Thus, Defendant's arguments are without merit.

#### 2. Applicable Law

"No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." Fed. R. Civ. P. 5(a)(2). Thus, "[Rule] 5(a)(2) generally does not require service of pleadings and other papers which do not assert additional claims, but it does require that 'a pleading that asserts

a new claim for relief against such a party must be served on that party pursuant to Rule 4.' " *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 891 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014), *and aff'd*, 753 F.3d 521 (5th Cir. 2014); *see also* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1144 (4th ed. 2019) ("According to the second sentence of Rule 5(a)(2), however, a party who is in default for failure to appear is entitled to receive a pleading asserting a new claim for relief against him, but it must be served on him under Rule 4 as if it were original process.").  For example, in *Williams v. Eadgear Holdings USA, Inc.*, No. 13-125, 2013 WL 12114865, at *1 (W.D. Tex. Aug. 2, 2013), the Court found, "Because the claims against the named defendants are the same in both the second amended complaint and third amended complaint, except as to newly-added GoFun Places, SRL, service of the third amended complaint [was] unnecessary."

Further, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).  "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

"[A] district court's dismissal under Rule 4(m) [is reviewed] for abuse of discretion." *Newby v. Enron Corp.*, 284 F. App'x 146, 149 (5th Cir. 2008) (per curiam) (citing *Traina v. United States,* 911 F.2d 1155, 1157 (5th Cir. 1990)).  The Fifth Circuit has explained:

> Under Rule 4(m), a district court is permitted to dismiss a case without prejudice if a defendant has not been served within [90][2] days after a complaint is filed. *Thompson v. Brown,* 91 F.3d 20, 21 (5th Cir. 1996). However, if a plaintiff can establish good cause for failing to serve a defendant, the court must allow additional time for service. *Id.* Moreover, even if good cause is lacking, the court has discretionary power to extend time for service. *Id.* Such relief may be warranted,

---

[2] The 2015 advisory committee notes to Rule 4(m) explain that, "[t]he presumptive time for serving a defendant [was] reduced from 120 days to 90 days."

"for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Fed. R. Civ. P. 4(m) advisory committee's note (1993).

*Id. See also Williams v. Ass'n De Prevoyance Interentreprises*, No. 11-1664, 2013 WL 394026, at *1 (E.D. La. Jan. 30, 2013) ("While Rule 4(m) permits a district court to dismiss a defendant without prejudice if not served within [90] days of a complaint, the Fifth Circuit has acknowledged that this is discretionary. "[E]ven if good cause is lacking, the court has discretionary power to extend time for service." It is only when good cause exists that a district court *must* extend the time for service." (citing *Newby*, 284 F. App'x at 149)). Thus, in *Williams*, the Court "exercise[d] its discretion and decline[d] to dismiss the [defendant] without prejudice" because, *inter alia*, though defendant had not been served with an amended complaint, it was "apprised of this matter" through service of a different complaint and "therefore ha[d] not been prejudiced in its defense." *Id.*

### 3. Analysis

In short, the Court finds no violation of Rule 5(a). Plaintiffs did not assert a "new claim for relief" in their *Amended Complaint*. While Plaintiffs have different *labels* for Count 1 in the original and *Amended Complaint* ("Substantive Due Process" in the original and "Procedural Due Process" in the amended one), the *substance* of both complaints is virtually identical, with most of the paragraphs reproduced almost verbatim from the first *Complaint* to the second. (*Compare Compl.* ¶¶ 36–50, Doc. 1, *with Am. Compl.* ¶¶ 36–50, Doc. 27.) Further, despite its "Substantive Due Process" label, the original complaint still invokes the protection of "procedural due process required by the Fourteenth Amendment." (*Compl.* ¶ 39, Doc. 1.) Given the near mirror images between the two Count 1s, and given the Court's belief that Count 1 has, all along, been a claim rooted in procedural due process, the Court declines to dismiss Plaintiffs' claims against Blache for violating Rule 5(a).

Further, even if service was required under Rule 5(a), the Court would exercise its discretion under Rule 4(m) and not dismiss Plaintiffs' claims against Blache. Again, given the close similarity between the claims, and given the fact that, as in *Williams*, Defendant has been apprised of this matter and the claims against him through service of the original *Complaint* (Doc. 11) and has thus not been prejudice, the Court finds that dismissal is unwarranted. Plaintiffs are instructed to be mindful of these rules, however, should they amend the complaint after the Court's rulings to cure any deficiencies.

### B. Fetty's Claims

#### 1. Parties' Arguments

Defendant argues that Fetty has asserted no facts to support the conclusion that his procedural due process rights were violated. "He instead attempts to manufacture a constitutional violation by piggybacking on the claims of a wholly sperate person." (Doc. 38-1 at 4.) According to the documents submitted by Defendant (of which Defendant asks the Court to take judicial notice), the Board took action against Delta's license, not any license held by Fetty. Thus, Fetty has no cause of action under § 1983. Further, the *Amended Complaint* does not allege that Fetty was ever issued a registration card or that this card was revoked, so Fetty has no claim for relief under § 1983.

Plaintiffs first respond that, to consider documents outside the complaint, the Court must convert the instant motion to a motion for summary judgment and give them an opportunity to respond under Rule 12(d). Plaintiff then points to specific paragraphs of the *Amended Complaint* which purport to show that the license was issued by the Board to Fetty and Delta. (Doc. 40 (citing *Am. Compl.* ¶ 7, 8).)

## 2. Applicable Law

Defendant is correct that "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. *See Louisiana ex rel. Guste v. United State*s, 656 F. Supp. 1310, 1314 n. 6 (W.D. La. 1986), *aff'd*, 832 F.2d 935 (5th Cir. 1987). . . . Accordingly, the consideration of the consent judgment does not convert this motion into one for summary judgment.").

Further, Defendant is also correct that individuals and limited liability companies are distinct under Louisiana law. As one Louisiana appellate court explained:

> La. R.S. 12:1329 states in pertinent part: "[a] member [of an L.L.C.] shall have no interest in limited liability company property." Thus, members of a limited liability company have no right to sue personally for damages to limited liability company property. La. R.S. 12:1320(B). *See also, Roth v. Voodoo BBQ*, 07–0295, p. 3 (La. App. 4 Cir. 08/01/07), 964 So. 2d 1095, 1097; *and Van Meter v. Gutierrez*, 2004–0706 (La. App. 4 Cir. 2/16/05), 897 So. 2d 781, 787 (citation omitted).

*Zeigler v. Hous. Auth. of New Orleans*, 2012-1168 (La. App. 4 Cir. 4/24/13), 118 So. 3d 442, 450. For example, in *Zeigler*, the Fourth Circuit found that "plaintiff, in his personal capacity, ha[d] no standing to personally sue and recover damages for injury suffered by [his company] Inspeq. Thus, the trial court correctly granted defendants' exception of no right of action relative to the plaintiff's personal standing to sue." *Id.*

## 3. Analysis

The Court will deny Defendant's motion. The Court notes at the outset that, if this matter goes to trial, Fetty will not be able to recover for Delta's damages and Delta will not be able to recover for Fetty's. That much is clear from the above case law and not largely disputed.

However, what is less clear at this time is the extent to which Fetty has standing to sue and claim an interest in what happened. As is manifestly clear from the allegations set forth above, the *Amended Complaint* alleges throughout that both Fetty and Delta have licenses that were adversely affected by Defendant's conduct. (*See, e.g., Am. Compl.* ¶ 7 ("Fetty and/or Delta Tactical is Licensee of the [Board] having been issued license number 0966 thereby on March 22, 2017"), 8 ("On October 16, 2017, the [Board], acting through Blache issued a 'Notice of Revocation of Company License Number 0966' . . . which purportedly revoked the license issued to Fetty and/or Delta Tactical which was issued thereto by the [Board] on March 22, 2017"), 24 ("Colt further advised Dalton that Blache had already talked to the . . . Board members, and that the Board had already decided that Fetty's license would be revoked, and that Fetty would not be getting his license back"), Doc. 27.)

Further, even the documents submitted by the Defendant with the instant motion lead to conflicting conclusions. On the one hand, the Company License # 0966 is indeed issued to Delta. (Doc. 38-2 at 10.) However, LSBPSE Executive Order No. 17-004 states that the "Purpose" of the document was "[t]o establish a six (6) month period of probation on the company license issued to Nicholas Fetty and Delta Tactical, LLC, State Board Company License No. 0966." (Doc. 38-2 at 11.)

Given these ambiguities, the Court declines to dismiss Fetty's claims at the pleading stage. Construing the *Amended Complaint* and the evidence in a light most favorable to Plaintiffs (as the Court is required to do), the Court finds that Fetty has a plausible claim for relief for Defendant's conduct.

If Defendant wishes to raise this argument again at the summary judgment stage after discovery, the Court will of course consider it. As the Fifth Circuit recently explained:

> Since they are not mere pleading requirements, but rather an indispensable part of the plaintiffs case, each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*See In re Deepwater Horizon*, 739 F.3d 790, 799–800 (5th Cir. 2014). The same reasoning applies here. Plaintiffs have sufficiently established standing for Fetty at this juncture, but they must be prepared to prove this later in the proceeding with summary judgment evidence.

### C. Delta's Claims

#### 1. Parties' Arguments

Defendant next asserts that Delta has no cause of action against him. Defendant points to certain paragraphs in the *Amended Complaint* in which *Fetty* is the one who is alleged to have lost his license. Defendant asserts, "Delta Tactical cannot use the claims of another person as conduit (sic) to state a Section 1983 claim in its favor. Accordingly, dismissal of the claims asserted against Blache is warranted as a matter of law." (Doc. 38-1 at 6–7.)

Defendant next argues that there are "no allegations that Blache initiated the conversations or attempted to unduly influence the process. Delta Tactical instead claims the alleged *ex parte* communications violated Louisiana Revised Stat[.] 49:960(A)." (Doc. 38-1 at 7.) "However," Defendant continues, "it is well settled that Section 1983 imposes liability for the violation of rights protected by the Constitution and federal law and not for violations of duties arising out of state law." (Doc. 38-1 at 7 (citations omitted).) Thus, Delta's claim must be dismissed.

Plaintiff responds that Delta too has an interest in the license. "The claim asserted by Delta Tactical are the claims of Delta Tactical rather that Fetty." (Doc. 40 at 5.) Plaintiff does not respond to the arguments about § 1983 being rooted in the Constitution and federal law rather than state duties.

### 2. Applicable Law

The Fourteenth Amendment provides in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. "In order to state a claim for a due process violation, Plaintiff must allege (1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law." *Holden v. Perkins*, 398 F. Supp. 3d 16, 23 (E.D. La. 2019) (Barbier, J.) (citing *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir. 1991)).

As to the first requirement, Judge Barbier of the Eastern District has stated:

> The Supreme Court has explained that for purposes of the due process clause, property interests are created and defined by existing rules or understandings that stem from an independent source such as state law. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). The Court further stated that a protected property interest requires more than a person's abstract need, desire, or unilateral expectation of it; one must instead have a legitimate claim of entitlement to the property interest. *Id.* In addition, although the existence of a property interest must be decided initially by reference to state law, federal constitutional law determines whether that interest rises to the level of entitlement protected by the due process clause. *Shawgo v. Spradlin*, 701 F.2d 470, 475 (5th Cir. 1983) (citing *Winkler v. Cnty of DeKalb*, 648 F.2d 411, 414 (5th Cir. 1981)).
>
> . . . Regarding the meaning of a "protected property interest," "the hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause'." *Findeisen v. N.E. Indep. School Dist.*, 749 F.2d 234, 237 (5th Cir. 1984). A property interest is created when a person has secured an interest in a specific benefit to which the individual has "a legitimate claim of entitlement." *Bd. of Regents of State Colls., v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). However, the interest must be more than an "abstract need or desire" or a "unilateral expectation" of the benefit. *Id.*

*Holden*, 398 F. Supp. 3d at 22–23.

" 'Privileges, licenses, certificates, and franchises . . . qualify as property interests for purposes of procedural due process.' " *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 220 (5th Cir. 2012) (quoting *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977)). "This is because, once issued, a license or permit 'may become essential in the pursuit of a livelihood.' " *Id.* (quoting *Bell v. Burson*, 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971)).

"Because permits and licenses relate to the maintenance of a person's livelihood, '[s]uspension of issued licenses . . . involves state action that adjudicates important interests of the licensees.' " *Bowlby*, 681 F.3d at 220 (quoting *Bell*, 402 U.S. at 539, 91 S. Ct. 1586; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("We have frequently recognized the severity of depriving a person of the means of livelihood.")). "Therefore, once issued, a license or permit cannot be taken away by the State without due process." *Id.* (citing *Bell*, 402 U.S. at 539, 91 S. Ct. 1586). " '[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.' " *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)).

"The essential elements of . . . procedural due process under the Constitution are notice and an opportunity to respond." *Richmond v. Coastal Bend Coll. Dist.*, 883 F. Supp. 2d 705, 713 (S.D. Tex. 2012) (citing *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003)). As to the opportunity to respond, "the Supreme Court has held that '[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.' " *Bowlby*, 681 F.3d at 220 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L.

Ed. 2d 18 (1976) (quotation marks and citation omitted)). "Depending on the circumstances and the interests at stake, a fairly extensive evidentiary hearing may be constitutionally required before a legitimate claim of entitlement may be terminated." *Richmond*, 883 F. Supp. 2d at 713 (citing *Brock v. Roadway Exp., Inc.*, 481 U.S. 252, 261, 107 S. Ct. 1740, 1747, 95 L. Ed. 2d 239 (1987)). "In other circumstances, however, the Supreme Court has upheld procedures affording less than a full evidentiary hearing if some kind of hearing ensuring an effective initial check against mistaken decisions is provided before the deprivation occurs and a prompt opportunity for complete administrative and judicial review is available." *Id.* (citing *Brock*, 481 U.S. at 261–62, 107 S. Ct. at 1747).

### 3. Analysis

Preliminarily, it's worth noting that, after Defendant argues that the claims by Fetty should be dismissed because they are in fact more appropriately brought by Delta, Defendant then essentially argues that the claims by Delta should be dismissed because they are in fact more appropriately brought by Fetty. This takes some chutzpah. As stated above, if the case goes to trial, Fetty will not be able to recover for Delta's damages and vice versa. Nothing further need be said.

Additionally, Plaintiffs' counsel's position is worth critiquing as well. Plaintiffs completely failed to respond in any way to the substance of Defendant's argument that Plaintiff has no right to relief under § 1983 and has otherwise failed to demonstrate how or why they have a state-created property interest in the license at issue that is recognized by federal law. On this ground alone, Defendant's motion could be granted. *See JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (finding that operative complaint could

be dismissed because plaintiff failed to respond to the substance of defendant's arguments (numerous citations omitted)).

However, the Court will decline to do so in this case because Plaintiffs have clearly attempted to assert a claim § 1983 claim under the due process clause of the Fourteenth Amendment. As alleged, Plaintiffs clearly have a property interest in the state-issued license which allows them to engage in the business of private contract security for their livelihood. *See Bowlby*, 681 F.3d at 220 (finding that plaintiff had a property interest in permits to operate a "Sno Cone" hut issued by a zoning board because they allowed her to "operate a business 'in the pursuit of a livelihood,' " and reversing district court's granting of motion to dismiss when permit was revoked without prior notice or hearing). Further, Plaintiffs clearly allege that Defendant deprived them of a meaningful opportunity to respond through the sham hearing that was conducted. (*See Am. Compl.* ¶¶ 17–27, Doc. 27.) Thus, Plaintiffs have stated a viable claim, rooted in the Constitution, and Defendant's motion on this issue must be denied.

Defendant points to *Evans v. City of Dallas*, 861 F.2d 846 (5th Cir. 1988) in support of his argument, but this case does not change the Court's conclusion. In *Evans*, the Fifth Circuit held that the "district court erred in finding that [plaintiff] had a legitimate claim of entitlement in his continued employment[.]" *Id.* at 850. The appellate court had explained that, "where state or local regulations indicate that an employee may be terminated only for cause, that employee has a property interest in his continued employment." *Id.* at 849. Plaintiff had pointed to some provisions of a personnel manual to try to establish his property interest, but the appellate court found that the manual's language "merely establishe[d] a procedure through which termination must be accomplished." *Id.* The Fifth Circuit went on to say:

> The personnel manual succinctly states that probationary employees may be discharged "at any time." In light of this notation, the subsequent reference to valid

> reasons [for such discharge] merely sets out the administrative procedures required to accompany such discharge. The existence of such procedures cannot be used as a bootstrap to aid the finding of an entitlement. [*Loudermill*, 470 U.S. at 542, 105 S. Ct. at 1493 (" '[p]roperty' cannot be defined by the procedures provided for its deprivation....").]

*Id.* at 850.

This case, however, is markedly different. Here, Plaintiffs' property interest is not continued employment, and its source is not a policy manual. Rather, again, "[p]rivileges, licenses, certificates, and franchises . . . qualify as property interests for purposes of procedural due process. This is because, once issued, a license or permit 'may become essential in the pursuit of a livelihood.' " *Bowlby,* 681 F.3d at 220 (citations and quotations omitted). Further, unlike *Evans,* which allowed for discharge of probationers "at any time," *Evans*, 861 F.2d at 850, here the relevant state law only allows a license to be revoked after a finding by the Board that the licensee committed an "egregious act" and only after "reasonable notice and opportunity for a fair and impartial hearing held in accordance with the Administrative Procedure Act," La. Rev. Stat. Ann. § 37:3288(A)(1). Thus, *Evans* is distinguishable. For all these reasons, Defendant's motion to dismiss Delta's § 1983 claim must be denied.

### D. Plaintiffs' Claims for Emotional Damages

#### 1. Parties' Arguments

Defendant next argues that corporations and limited liability companies cannot incur damages for mental anguish or emotional distress. Thus, Delta's claim for emotional distress damages must be dismissed.

Further, Defendant asserts that Fetty's claim should be dismissed as well, as Plaintiffs have failed to allege that Blanche engaged in "extreme and outrageous conduct and that Fetty's

emotional distress [was] severe." (Doc. 38-1 at 8.)  Accordingly, Fetty's claim for emotional distress fails.

Plaintiffs respond, "Fetty urges general non-pecuniary tort claim damages, including a claim for emotional distress.  Neither Fetty [nor] Delta [T]actical asserted a claim for intentional infliction of emotional distress, notwithstanding Blache's assertions to the contrary." (Doc. 40 at 6.)  Notwithstanding that, Plaintiffs say they properly allege that Defendant engaged in conduct arising to the level of intentional infliction of emotional distress.

### 2. Analysis

In short, the motion will be granted on this issue.  Defendant is correct that limited liability companies cannot sustain damages for mental anguish, *see Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, No. 07-7965, 2009 WL 86671, at *3 (E.D. La. Jan. 13, 2009) (citing *AT & T Corp. v. Columbia Gulf Transmission Co.*, No. 07-1544, 2008 WL 4585439 at *3 (W.D. La. Sept. 15, 2008)), so this claim must fall.

Moreover, Fetty's claim for emotional distress damages also fails, though not for the reasons Defendant argues.  Defendant maintains that Fetty has failed to state a claim for intentional infliction of emotional distress, but Plaintiffs correctly point out that Fetty never made such a claim.  Rather, this claim fails because it lacks adequate factual allegations.  While plaintiffs can recover emotional distress damages for a procedural due process violation under § 1983, *see Carey v. Piphus*, 435 U.S. 247, 264, 98 S. Ct. 1042, 1052, 55 L. Ed. 2d 252 (1978), [3] and for negligent infliction of emotional distress under state law, *see, e.g., Barrino v. E. Baton Rouge Par. Sch. Bd.*,

---

[3] As the Supreme Court said in *Carey*: "In sum, then, although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused." *Carey*, 435 U.S. at 264, 98 S. Ct. at 1052.  Because such damages are not presumed, if a plaintiff fails to adequately prove actual damages from a denial of procedural due process at trial, he will only be entitled to recover nominal damages. *See id.*, 435 U.S. at 266–67, 98 S. Ct. at 1054.

96-1824 (La. App. 1 Cir. 6/20/97); 697 So. 2d 27, 33-34,[4] here Plaintiffs have failed to allege any facts that Fetty actually sustained emotional distress damages. Without more, Plaintiffs have failed to state a viable claim for these damages against Defendant.

### E. Plaintiffs' Claims for Punitive Damages

#### 1. Parties' Arguments

Defendant last argues that Plaintiff's claim for two million dollars in punitive damages should be dismissed. Defendant argues that punitive damages require evil motive or intent or callous indifference to rights, but Blache's conduct did not rise to this level.

Plaintiffs dispute this. Plaintiffs argue that their license was revoked without a hearing in violation of Louisiana law. Blache did so callously and with reckless indifference to Plaintiffs' rights. As a result, Plaintiffs argue, their claims for punitive damages survive.

#### 2. Applicable Law

Two standards of punitive damages govern this case. First, "[p]unitive damages may be awarded [under § 1983] only when the defendant's individual conduct 'is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights.' " *Bouchereau v. Gautreaux*, No. 14-805, 2015 WL 5321285, at *13 (M.D. La. Sept. 11, 2015) (deGravelles, J.) (quoting *Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (citation omitted)). Second, as to the state law claims, "[p]unitive damages are not allowed under Louisiana law in absence of a specific statutory provision." *Golden v. Columbia Cas. Co.*, No. 13-547, 2015 WL 3650790, at *9 (M.D. La. June 11, 2015) (deGravelles, J.) (citing *Hoffpauir v. Columbia Cas.*

---

[4] As *Barrino* explained: "It is well established in [Louisiana] jurisprudence that a claim for negligent infliction of emotional distress unaccompanied by physical injury is viable" under La. Civ. Code art. 2315, though "this recovery has been limited to cases involving the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Id.*, 697 So. 2d at 33–34 (citations and quotations omitted).

*Co.*, No. 12–403, 2013 WL 5934699, at *14 (M.D. La. Nov. 5, 2013) (citing *Zaffuto v. City of Hammond*, 308 F.3d 485, 491 (5th Cir. 2002))).

### 3. Analysis

Having carefully considered the matter, the Court will grant the motion in part and deny it in part. First, it is clear that Plaintiffs have no right to punitive damages for their claims arising under Louisiana law. These claims must thus be dismissed.

Second, as to their § 1983 claims, however, Plaintiffs have sufficiently alleged that Blache acted with reckless indifference to their constitutional rights. Specifically, Blache was initially responsible for revoking Plaintiffs' license (*Am. Compl.* ¶ 8, Doc. 27)); told Colt that the hearing was "not about whether or not Fetty loses his license, [and] that it would be about whether Fetty could ever get another license" (*id.* ¶¶ 22–23); and further told Colt that Fetty's license would be revoked, and that Fetty would not be getting his license back (*id.* ¶ 24). Moreover, according to Plaintiffs, "Colt further advised Dalton that the hearing before the . . . Board was merely a formality intended, only, to satisfy the due process requirements." (*Id.* ¶ 25.). Construing the facts in a light most favorable to Plaintiffs, Colt's conclusion could only be drawn from his conversation with Blache. A reasonable juror could find from all of these allegations (if true) that Blache acted with reckless indifference to Plaintiffs' rights. Defendant's motion is denied on this issue.

### F. Leave to Amend

Lastly, the Court must address whether it will grant leave to amend the operative complaint to cure the above deficiencies. "[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts

often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. . . . A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2019).

Here, Plaintiffs already amended the operative complaint once, and they did not formally request leave to amend. Nevertheless, because Plaintiffs did not amend their complaint in response to a ruling by this Court, and because of the above "wise judicial practice," the Court will grant Plaintiffs one final opportunity to amend their complaint to state viable claims against Defendant Blache. *See JMCB*, 336 F. Supp. 3d at 641–42 (granting leave to amend, despite strong argument against this by defendant, when amendment to plaintiff's complaint did not come in response to a ruling from the court).

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that *Defendant's Motion to Dismiss Pursuant to Rule 4(m), 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure* (Doc. 38) filed by Defendant Fabian Blache is **GRANTED IN PART** and **DENIED IN PART.** The motion is granted in that Plaintiffs' claims for emotional damages are **DISMISSED WITHOUT PREJUDICE.** In all other respects, Defendant's motion is **DENIED**.

Plaintiffs shall have twenty-eight (28) days in which to amend their operative complaint to cure the above deficiencies. This twenty-eight (28) day period shall commence when the Court issues a ruling on the other pending motion to dismiss (Doc. 42). If Plaintiffs fail to do so, their defective claims against this Defendant will be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on January 28, 2020.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**