# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**NICHOLAS A. FETTY, ET AL.**

**VERSUS**

**THE LOUISIANA STATE BOARD OF PRIVATE SECURITY EXAMINERS, ET AL.**

**CIVIL ACTION**

**NO. 18-517-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to F.R.C.P. 12(B)(5) and 12(B)(6)* (Doc. 42) filed by Defendants Ritchie Rivers, Mark A. Williams, Marian H. Pierre, Wilbert Sanders, Jr., Ector Echegoyen, Maria V. Landry, Edward Robinson, Sr., Durell P. Pellegrim, and Misty Finchum (collectively, the "Board Members" or "Defendants"). Plaintiffs Nicholas A. Fetty ("Fetty") and Delta Tactical, LLC ("Delta Tactical" or "Delta") (collectively, "Plaintiffs"), oppose the motion. (Doc. 45.) The Board Members filed a reply. (Doc. 49.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted in part and denied in part.

## I. Relevant Factual Background

### A. Introduction

The following factual allegations are taken from Plaintiffs' *Amended and Supplemental Complaint* ("*Amended Complaint*" or "*Am. Compl.*") (Doc. 27). They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff Fetty is the sole and managing member of Delta Tactical. (*Am. Compl.* ¶ 7, Doc. 27.) "Plaintiffs are engaged in the business of providing private security agents and security services" in Louisiana. (*Id.* ¶ 6.) This requires a license from the state. (*Id.*)

Pursuant to La. Rev. Stat. Ann. § 37:3271 *et seq.* (specifically § 37:2373), Louisiana established the Louisiana State Board of Private Security Examiners (the "Board") as an agency within the Department of Public Safety and Corrections ("DPSC"). The Board requires private security agents and businesses to satisfy certain statutory and administrative requirements to obtain a license to engage in this practice. (*Am. Compl.* ¶ 6, Doc. 27.)

Fabian Blache "is responsible for supervising all employees of the Board, performing all administrative duties of the Board, supervising all inspectors, performing administrative inspections, and performing any duties as may be prescribed by the Board for the proper administration of the practice of private security agents and businesses." (*Id.* ¶ 5(B).) Again, the Board Members include Ritchie Rivers, Mark A. Williams, Marian H. Pierre, Wilbert Sanders, Jr., Ector Echegoyen, Maria V. Landry, Edward Robinson, Sr., Durell P. Pellegrin, and Misty Finchum. (*Id.* ¶ 5(C).) LeBlanc is the Secretary of DPSC. (*Id.* ¶¶ 5(A), 6.) Blache, the Board Members, LeBlanc, and Landry have all been named as defendants, but this ruling deals only with the instant motion to dismiss brought by the Board Members.[1] (Doc. 38.)

According to the *Amended Complaint*, "Fetty and/or Delta Tactical is Licensee of the [the Board] having been issued license number 0966 thereby on March 22, 2017." (*Am. Compl.* ¶ 7, Doc. 27.) This suit involves Plaintiffs' loss of that license. In short, Plaintiffs claim that

---

[1] Defendants Landry and LeBlanc previously filed a motion to dismiss (Doc. 34) which this Court granted in part and denied as moot in part. (Doc. 44.) Further, Defendant Blache filed a motion to dismiss (Doc. 38) which the Court also granted in part and denied in part. The Court gave Plaintiffs twenty-eight (28) days from when the Court issued rulings on the pending motions to dismiss (including the instant motion) in which to file a second amended complaint to cure any deficiencies. Thus, that deadline will commence with the filing of this ruling.

Defendants have deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution and Article I, Sections 2 and 24 of the Louisiana Constitution of 1974. (*Id.* ¶ 6.)

### B. The Notice and Cease and Desist Order

On October 16, 2017, the Board, through Blache, issued a "Notice of Revocation of Company License Number 0966" (the "Notice"), which "purportedly revoked" Plaintiffs' license. (*Am. Compl.* ¶ 8, Doc. 27.) The Notice to Delta allegedly said, "[T]his letter serves to notify you that pursuant to LSA – R.S. 37:3289(A)(9), the [Board] is revoking your company license to engage in the private security business in Louisiana . . ." (*Id.*)

Plaintiffs further allege in the *Amended Complaint* (sic throughout):

Additionally, on October 16, 2017, the [Board], purportedly acting through Blache, issued a "Cease and Desist Order" ordering that Delta and/or Fetty nor Delta Technical has been served with the Cease and Desist Order as required by LSA – R.S. 37:3293 and/or LAC, Title 46, Part LIX, Chapter 6, ¶ 601, and/or Chapter 9, § 901. . . . The Cease and Desist Order directed to Delta to "forthwith to CEASE & DESIST from engaging in the contract security business within the State of Louisiana."

(*Id.* ¶¶ 9–10.)

Plaintiffs claim that both the Notice and the Cease and Desist Order are illegal and unlawful. (*Id.* ¶ 11.) Plaintiffs specifically point to La. Rev. Stat. Ann. § 37:3288, which provides for a criminal penalty and revocation of these licenses for those committing "egregious acts" "after reasonable notice and opportunity for a fair and impartial hearing held in accordance with the Administrative Procedure Act." (*Am. Compl.* ¶ 12 (quoting La. Rev. Stat. Ann. § 37:3288), Doc. 27.) Plaintiffs also quote provisions of the Louisiana Administrative Code. The first provides that, "before revoking or suspending a license or registration card, or imposing fines or costs over $500, the board will afford the applicant an opportunity for a hearing after reasonable notice of not

less than 15 days," except in certain inapplicable cases. (*Id.* ¶ 13 (quoting La. Admin. Code tit. 46, Pt LIX, § 601(A)).) The second regulation provides that any person who has violated a provision of La. Rev. Stat. Ann. § 37:3270 *et seq.* or other applicable rule is subject to a penalty or suspension or revocation of his license, but this occurs "after reasonable notice and opportunity for a fair and impartial hearing held in accordance with the Administrative Procedure Act[.]" (*Id.* ¶ 14 (quoting La. Admin. Code tit. 46, Pt LIX, § 901).)  Plaintiffs allege that, contrary to these laws, they were both denied notice and an opportunity for a fair and impartial hearing before the Notice and Cease and Desist Order were issued. (*Id.* ¶¶ 15–16.)

### C.  The Sham Hearing

On October 31, 2017, Plaintiffs requested a "fair and impartial hearing, . . . notwithstanding the requirement" that this should have happened anyway before the Board's actions. (*Am. Compl.* ¶ 17, Doc. 27.)  In response, the Board "scheduled a purported fair and impartial hearing" on Plaintiffs' "license revocation for Thursday, January 25, 201[8]." (*Id.* ¶ 18.)

Delta had two employees—Dalton Miller and Colt Miller. (*Id.* ¶ 19.)  According to Plaintiffs, since the revocation and Cease and Desist Order, "Colt had numerous and significant contact with Blache." (*Id.* ¶ 20.)  The *Amended Complaint* alleges: "On information and belief, Colt made application to the [Board] for licensure, which was been approved (sic), pending compliance with the [Board's] insurance requirements." (*Id.* ¶ 21.)

On November 17, 2017, Colt and Dalton had a conversation, during which "Colt volunteered and told Dalton that he, [Colt,] had talked to Blache about the hearing requested by Fetty, that the hearing is not about whether or not Fetty loses his license, [and] that it would be about whether Fetty could ever get another license." (*Am. Compl.* ¶¶ 22–23, Doc. 27.)  Colt also advised Dalton "that Blache had already talked to the . . . Board [M]embers, and that the Board

had already decided that Fetty's license would be revoked, and that Fetty would not be getting his license back." (*Id.* ¶ 24.)  According to Plaintiffs, "Colt further advised Dalton that the hearing before the . . . Board was merely a formality intended, only, to satisfy the due process requirements." (*Id.* ¶ 25.)

On December 27, 2017, Plaintiffs filed a "Motion for *En Banc* Recusal of Members of the [Board] with supporting Memorandum." (*Id.* ¶ 26.)  Counsel for both Plaintiffs and the Board agreed to convert the January 25, 2018, hearing from one dealing with the revocation and order to a limited hearing on Plaintiffs' motion for recusal. (*Id.* ¶ 27.)  On January 25, 2018, the Board held this hearing. (*Id.* ¶ 28.)  The motion was denied. (*Id.*)

### D. Plaintiffs' Claims

Plaintiffs assert that Louisiana's Private Security Regulatory and Licensing Law, "as applied to Delta, currently prevents and continually prevents [Plaintiffs] from fulfilling contracts for services, [and] employing competent, experienced private security agents." (*Am. Compl.* ¶ 32, Doc. 27.)  All Defendants have caused Fetty to terminate Delta's most qualified agents and contracts and to spend considerable resources to obtain new ones. (*Id.* ¶ 33.)  Because of all Defendants, "Delta cannot effectively operate its business" and cannot "offer private security services to its customers." (*Id.* ¶ 34.)  Delta has also suffered a loss of goodwill with its customers. (*Id.* ¶ 35.)

Plaintiffs' first claim is a violation of procedural due process under the federal and state constitutions. (*Id.* ¶¶ 36–50.)  Plaintiffs complain about Blache's *ex parte* communications as well as the failure of the Board to provide a fair and impartial hearing. (*Id.* ¶¶ 45–48.)  Specifically, after citing the law requiring recusal of officers and agency members who "cannot accord a fair and impartial hearing or consideration[,]" (*Am. Comp.* ¶ 44, Doc. 27 (citing La. Rev. Stat. Ann. §

49:960(B))), Plaintiffs allege, "The [Board] was placed in a compromised position by Blache in comments attributed to him, and found itself in a quandary through no fault of its own. Notwithstanding the 'well has been poisoned', and the Board cannot drink therefrom without adverse effects befalling Fetty," (*id.* ¶ 45).   According to Plaintiffs, they were entitled to an *en banc* recusal of the Board (1) because "Fetty could not, in any circumstance, receive a fair and impartial hearing mandated by due process, if presided over by the . . . Board[,]" (*id.* ¶ 46) and (2) because:

> [w]hile the [Board] members may have believed that they can disregard what Blache was alleged to have done, nonetheless, any possible scenario other than full *en banc* recusal and withdrawal of the Board would and did project an appearance of partiality and impropriety, and also call into question whether the . . . Board was subliminally biased by Blache's alleged *ex parte* communication.

(*id.* ¶ 47.)  Plaintiffs maintain that the "failure of the Board to withdraw, *en banc*, compromised the public's confidence in the adversarial system to receive a fair and impartial hearing, and eroded the integrity of the administrative process." (*Id.* ¶ 48.)  Plaintiffs further assert that the Louisiana laws at issue, as applied, deprived Plaintiffs of their federal and state rights to procedural due process. (*Id.* ¶ 49.)  Plaintiffs claim continuing irreparable harm from Defendants' conduct and seek injunctive relief. (*Id.* ¶ 50.)

Plaintiffs also assert that Defendants violated Article I, Section 24 of the Louisiana Constitution. (*Am. Compl.* ¶ 52, Doc. 27.)  This section provides: "The enumeration in this constitution of certain rights shall not deny or disparage other rights retained by the individual citizens of the state." La. Const. Art. I, § 24.  Plaintiffs maintain that this provision "protects Plaintiffs' right to economic liberty—that is, their right to earn a living and conduct business free from unreasonable governmental interference." (*Am. Compl.* ¶ 53, Doc. 27.)  Plaintiffs plead that Louisiana's Private Security Regulatory Law, as applied, has "no real and substantial relationship

to public health, safety, or welfare" and thus violated Article I, Section 24. (*Id.* ¶ 57.) According to Plaintiffs, on September 22, 2017, Blache drafted a letter to Plaintiffs alleging that "Fetty had stipulated to an administrative penalty and fine in the amount of . . . $5,000.00[] . . . , for the same alleged violations which formed the basis for the revocation and cease and desist order." (*Id.* ¶ 58.) If Plaintiffs had paid this fine, they would have been allowed to continue to operate. (*Id.* ¶ 59.) Meanwhile, Plaintiffs claim that "any and all necessary corrective action identified in Blache's writing had been completed." (*Id.* ¶ 60.) Plaintiffs say that the Louisiana laws at issue, as applied, advance no legitimate governmental interest and are arbitrary and capricious. (*Id.* ¶¶ 61–62.) Again, Plaintiffs seek injunctive relief. (*Id.* ¶ 64.)

Plaintiffs pray for the following: (a) a declaration that La. Rev. Stat. §§ 37:3270 *et seq.* and its implementing regulations are unconstitutional "when applied to Plaintiffs' practice of providing private security agents and private security services;" (b) a permanent injunction prohibiting Defendants from enforcing Louisiana's Private Security Regulatory Law and regulations against Plaintiffs' practice and services; (c) an award of damages for Defendants' violations of the state and federal constitutions; and (d) "all other relief to which Plaintiffs may show themselves entitled." (*Am. Compl.*, Doc. 27 at 17.) Plaintiffs also seek a number of separate items of damages, including:

> Pecuniary losses; loss of good will; mental anguish and/or mental pain, humiliation, embarrassment, inconvenience, emotional distress, loss of enjoyment of life, and other non-pecuniary losses – past, present and future; punitive damages in the amount of $2,315,000.00; any other damages which may be proved at a trial on the merits, and reasonable attorney's fees and costs of the present action.

(*Id.* at 18.)

### E. The Instant Motion

In the instant motion, Defendants assert that: (1) the state laws that created and authorized the Board are constitutional; (2) Plaintiffs failed to state a claim for a violation of their right to procedural due process; (3) Plaintiffs are entitled to qualified immunity and/or discretionary immunity; (4) Plaintiffs have no tort claim for emotional distress; and (5) Plaintiffs have no claim for punitive damages. (Doc. 42-2.)

## II. Relevant Standards

### A. Rule 12(b)(2) & 12(b)(5)

Federal Rule of Civil Procedure ("Rule") 12(b)(5) allows a party to move to dismiss for insufficient service of process. The party making service has the burden of demonstrating its validity when an objection to service is made. *Holly v. Metro. Transit Auth.*, 213 F. App'x 343, 344 (5th Cir. 2007) (citing *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). The district court has broad discretion in determining whether to dismiss an action for ineffective service of process. *George v. U.S. Dep't of Labor, Occupational Safety & Health Admin.*, 788 F.2d 1115, 1116 (5th Cir. 1986).

Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Buillion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citations omitted)). "Moreover, on a motion to dismiss for lack of

jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id.* ("Proof by preponderance of the evidence is not required."). However, in assessing whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.' " *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)); *cf.* Fed. R. Civ. P. 12(d) (listing only motions under Rule 12(b)(6) and 12(c) as requiring conversion to summary judgment if evaluated on matters outside the pleadings).

Proper service of process is an essential part of the procedure for establishing and proving personal jurisdiction. *Carimi*, 959 F.2d at 1349; *see also Delta S.S. Lines, Inc. v. Albano*, 768 F.2d 728 (5th Cir. 1985). In the absence of valid service of process, proceedings against a party are void. *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981).

### B. Rule 12(b)(6)

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a), the Fifth Circuit has explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia*, *S.A. De* C.V., No. 10-00177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

## III. Discussion

### A. Failure to Serve

#### 1. Parties' Arguments

Defendants first argue that Plaintiffs were required to serve them under Rule 4(e), but Plaintiffs failed to serve the *Amended Complaint* as required by this rule. Instead, Plaintiffs mailed a copy of the *Complaint* and a Waiver of Service of Summons to each of the Board Members by certified mail. Further, Plaintiffs failed to file proof of service into the record. Because Plaintiffs failed to properly effectuate service, their claims against the Board Members must be dismissed under Rule 4(m).

Plaintiffs respond that good cause exists in this case to excuse the delayed service. The Board Members were served with the original *Complaint*. After the *Amended Complaint* was filed, Plaintiffs sent each Board Member the Notice of a Lawsuit, Request to Waive Service of Summons, and a copy of the *Amended Complaint* via certified mail. Six of the nine board members received these documents. Plaintiffs urge that the Board Members received notice of the action and had an opportunity to answer and present defenses. Alternatively, Plaintiffs urge that the Court order that service be made within a specified time under this Court's Rule 4(m) discretion.

Defendants reply that Plaintiffs admit that service was not properly effectuated on Mark Williams, Ector Echegoyen, and Maria Landry. Thus, these Board Members should be dismissed from the action without prejudice for insufficient service. As to the other Board Members, Defendants dispute that mailing the summons to them by certified mail satisfies the requirements of Rule 4(e). Further, as to Plaintiff's request for additional time, Plaintiffs were already given an extension of time to effectuate service, yet they have still failed to do so timely.

## 2. Applicable Law

"No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." Fed. R. Civ. P. 5(a)(2). Thus, "[Rule] 5(a)(2) generally does not require service of pleadings and other papers which do not assert additional claims, but it does require that 'a pleading that asserts a new claim for relief against such a party must be served on that party pursuant to Rule 4.' " *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 891 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014), *and aff'd*, 753 F.3d 521 (5th Cir. 2014); *see also* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1144 (4th ed. 2019) ("According to the second sentence of Rule 5(a)(2), however, a party who is in default for failure to appear is entitled to receive a pleading asserting a new claim for relief against him, but it must be served on him under Rule 4 as if it were original process."). For example, in *Williams v. Eadgear Holdings USA, Inc.*, No. 13-125, 2013 WL 12114865, at *1 (W.D. Tex. Aug. 2, 2013), the Court found, "Because the claims against the named defendants are the same in both the second amended complaint and third amended complaint, except as to newly-added GoFun Places, SRL, service of the third amended complaint [was] unnecessary."

Rule 4(e) provides that an individual may generally be served in a judicial district of the United States by either: "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made;" or "(2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C)

delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e).

Additionally, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

"[A] district court's dismissal under Rule 4(m) [is reviewed] for abuse of discretion." *Newby v. Enron Corp.*, 284 F. App'x 146, 149 (5th Cir. 2008) (citing *Traina v. United States,* 911 F.2d 1155, 1157 (5th Cir. 1990)). The Fifth Circuit has explained:

> Under Rule 4(m), a district court is permitted to dismiss a case without prejudice if a defendant has not been served within [90][2] days after a complaint is filed. *Thompson v. Brown,* 91 F.3d 20, 21 (5th Cir. 1996). However, if a plaintiff can establish good cause for failing to serve a defendant, the court must allow additional time for service. *Id.* Moreover, even if good cause is lacking, the court has discretionary power to extend time for service. *Id.* Such relief may be warranted, "for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Fed. R. Civ. P. 4(m) advisory committee's note (1993).

*Id. See also Williams v. Ass'n De Prevoyonce Interentreprises*, No. 11-1664, 2013 WL 394026, at *1 (E.D. La. Jan. 30, 2013) ("While Rule 4(m) permits a district court to dismiss a defendant without prejudice if not served within [90] days of a complaint, the Fifth Circuit has acknowledged that this is discretionary. "[E]ven if good cause is lacking, the court has discretionary power to extend time for service." It is only when good cause exists that a district court *must* extend the time for service." (citing *Newby*, 284 F. App'x at 149)). Thus, in *Williams*, the Court "exercise[d] its discretion and decline[d] to dismiss the [defendant] without prejudice" because, *inter alia*, though

---

[2] The 2015 advisory committee notes to Rule 4(m) explain that, "[t]he presumptive time for serving a defendant [was] reduced from 120 days to 90 days."

defendant had not been served with an amended complaint, it was "apprised of this matter" through service of a different complaint and "therefore ha[d] not been prejudiced in its defense." *Id.*

### 3. Analysis

In short, the Court will deny the motion. Preliminarily, the Court finds that Plaintiffs failed to make proper service on the Board Members. Rule 5(e) requires service of pleadings that assert "new claims." Here, the original *Complaint* asserted claims against the Board Members in their official capacity (*Compl.* ¶ 5, Doc. 1) while the *Amended Complaint* asserted claims against them in their individual capacity (*Am. Compl.* ¶ 5(C), Doc. 27). This is significant because "[a]n official capacity suit is the equivalent of a suit against the entity of which the officer is an agent[,]" and "[t]o determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983." *Romain v. Governor's Office of Homeland Sec.*, No. 14-660, 2016 WL 3982329, at *6 (M.D. La. July 22, 2016) (citations and quotations omitted). Thus, the *Amended Complaint* clearly asserted new claims, and the Board Members were entitled to service of it. Plaintiffs have the burden of proving timely service, and they have failed to demonstrate how service by certified mail—particularly when three of the Board Members did not even receive it—satisfies the requirements of Rule 4(e).

However, the Court will exercise its discretion and require Plaintiffs to serve Defendants within a specified time. The Court will do so because, here, Defendants do not dispute the fact that Plaintiffs properly served the original *Complaint* (*see* Docs. 11–20) and that most received the *Amended Complaint* by certified mail, so they were "apprised of this matter." *See Williams v. Ass'n*, 2013 WL 394026, at *1. Moreover, despite the official/individual capacity differences in the two complaints, the due process claims in each pleading were nearly identical. (*Compare*

*Complaint* ¶¶ 36–50, Doc. 1, *with Am. Compl.* ¶¶ 36–50, Doc. 27.)  Plaintiffs' conduct is not to be lauded, but it does not warrant the harsh result of dismissal without prejudice.  Accordingly, Defendants' motion on this issue is denied.

### B.  Constitutionality of La. Rev. Stat. Ann. § 37:3271 *et seq.*

#### 1. Parties' Arguments

Defendants next attack Plaintiffs' alleged claim that La. Rev. Stat. Ann. § 37:3271 *et seq.* is unconstitutional as applied to them.  Defendants emphasize that statutes are presumed constitutional, particularly when, as here, they were enacted to promote a public purpose. Defendants also emphasize that Plaintiffs bear a heavy burden of demonstrating the unconstitutionality of a statute.  Lastly, Defendants maintain that their conduct was not "arbitrary and capricious," as Plaintiffs admit that the Board "found itself in a quandary through no fault of its own." (Doc. 42-2 at 7(citing *Am. Compl.* ¶ 45, Doc. 27).)

Plaintiffs respond first by emphasizing that, under the Board's regulations, Plaintiffs were entitled to notice before their license was revoked or suspended.  Plaintiffs then say (sic throughout):

> Nowhere in their Complaint, did, the Claimants question or challenge the constitutionality of the Louisiana Private Security, Regulatory and Licensing Law, La. R.S.37:3270, et seq., nor did they question the constitutionality of Louisiana Administrative Code, Title 46, Part LIX. The Claimants' lawsuit: (1) seeks to vindicate and recognize Plaintiffs' right to economic liberty under the United States Constitution and the Louisiana Constitution of 1974; (2) seeks to establish and seeks a Judgment declaring that the defendants violated and deprived Plaintiffs' of certain rights and privileges accorded and guaranteed by the Fourteenth Amendment to the United States Constitution and the Louisiana Constitution of 1974; and (3) seeks damages. Their Complaint is predicated on the Louisiana Private Security, Regulatory and Licensing Law and the Louisiana Administrative Code, Title 46, Part LIX, as that statute and those rules and regulations were applied by the [the Board] to the Claimants in this instance. The complaint clearly "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

> The Defendants deprivation the Claimants of their "property interests" in violation
> of due process of law. *Lynch v. Household Fin. Corp*., 405 U.S. 538 (1972).

(Doc. 45 at 8.)  Plaintiffs go onto conclude, "The [Board] had and were subject to procedural due process requirements, [and] its failure to follow their own rules and regulations resulted in the taking of the Claimants property interest without due process. In the Complaint, Claimants allege that the [the Board] violated their procedural due process rights." (Doc. 45 at 9.)

Defendants reply that Plaintiffs have still failed to state a claim against the Board Members. Again, Defendants note that, according to the *Amended Complaint*, the Board "found itself in a quandary through no fault of its own." (Doc. 49 at 3 (citing *Am. Compl.* ¶ 45, Doc. 27).)  Thus, any allegation that the Board was arbitrary and capricious must be dismissed.

## 2. Analysis

The Court finds that the parties are largely talking over each other on this issue.  Plaintiffs clearly concede that they are not asserting any constitutional attack on the Board's statutes or regulations.  Rather, their opposition shows that they are only asserting a due process claim under state and federal law and a claim for a violation of their right to "economic liberty" under the state constitution. (*See Am. Compl.* ¶¶ 36–65, Doc. 27.)  Thus, since Plaintiffs are not making the claim to which Defendants object, this part of the motion is denied.  However, Defendants' arguments will be relevant in the next section, which deals with the § 1983 claim.

## C.  Section 1983 Claims and Qualified Immunity

### 1. Parties' Arguments

Defendants next argue that Plaintiffs fail to state viable § 1983 claims.  Here, "Plaintiffs were given notice of the investigation, the charges filed and the opportunity for hearing.  Plaintiffs filed a Motion for En Banc Recusal of the Board Members which was heard . . . and denied.  The Board Members did nothing to violate Plaintiffs' rights under the Constitution."  (Doc. 42-2 at 8.)

As to qualified immunity, Defendants argue that Plaintiffs cannot establish that they acted objectively unreasonable under clearly established law.

As stated above, Plaintiffs respond that they have sufficiently established a due process claim. However, Plaintiffs do not respond to the arguments about qualified immunity.

Defendants respond by repeating their above argument that Plaintiffs failed to plead a due process violation. Further, Plaintiffs had the burden of demonstrating that qualified immunity does not apply, and they failed to do so.

## 2. Applicable Law

### a. Qualified Immunity

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034 (1987)). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' . . . [which] is effectively lost if a case is erroneously permitted to go to trial." *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 853 (S.D. Tex. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 2156 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009)). "The doctrine of qualified immunity was created to balance the interest of compensating persons whose federally protected rights have been violated against the fear that personal liability might inhibit public officials in the discharge of their duties." *Id.* (citing *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994)).

"In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2)

whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Gobert*, 463 F.3d at 345 (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson*, 555 U.S. at 236, 129 S. Ct. 808.

" 'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)). " 'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.' " *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596 (2004) (per curiam)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)). " 'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)).

" 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 137 S. Ct. at 552 (internal quotation marks omitted)). "But . . . [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff*

*v. Rickard*, 134 S. Ct. 2012, 2023 (2014)). "That is a necessary part of the qualified-immunity standard[.]" *Id.*

### b. Due Process Claims

The Fourteenth Amendment provides in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. "In order to state a claim for a due process violation, Plaintiff must allege (1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law." *Holden v. Perkins*, 398 F. Supp. 3d 16, 23 (E.D. La. 2019) (Barbier, J.) (citing *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir. 1991)).

As to the first requirement, Judge Barbier of the Eastern District has stated:

> The Supreme Court has explained that for purposes of the due process clause, property interests are created and defined by existing rules or understandings that stem from an independent source such as state law. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). The Court further stated that a protected property interest requires more than a person's abstract need, desire, or unilateral expectation of it; one must instead have a legitimate claim of entitlement to the property interest. *Id.* In addition, although the existence of a property interest must be decided initially by reference to state law, federal constitutional law determines whether that interest rises to the level of entitlement protected by the due process clause. *Shawgo v. Spradlin*, 701 F.2d 470, 475 (5th Cir. 1983) (citing *Winkler v. Cnty of DeKalb*, 648 F.2d 411, 414 (5th Cir. 1981)).
>
> . . . Regarding the meaning of a "protected property interest," "the hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause'." *Findeisen v. N.E. Indep. School Dist.*, 749 F.2d 234, 237 (5th Cir. 1984). A property interest is created when a person has secured an interest in a specific benefit to which the individual has "a legitimate claim of entitlement." *Bd. of Regents of State Colls., v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). However, the interest must be more than an "abstract need or desire" or a "unilateral expectation" of the benefit. *Id.*

*Id.* at 22–23.

" 'Privileges, licenses, certificates, and franchises . . . qualify as property interests for purposes of procedural due process.' " *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 220 (5th Cir. 2012) (quoting *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977)). "This is because, once issued, a license or permit 'may become essential in the pursuit of a livelihood.' " *Id.* (quoting *Bell v. Burson*, 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971)).

"Because permits and licenses relate to the maintenance of a person's livelihood, '[s]uspension of issued licenses . . . involves state action that adjudicates important interests of the licensees.' " *Bowlby*, 681 F.3d at 220 (quoting *Bell*, 402 U.S. at 539, 91 S. Ct. 1586; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("We have frequently recognized the severity of depriving a person of the means of livelihood.")). "Therefore, once issued, a license or permit cannot be taken away by the State without due process." *Id.* (citing *Bell*, 402 U.S. at 539, 91 S. Ct. 1586). " '[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.' " *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)).

"The essential elements of . . . procedural due process under the Constitution are notice and an opportunity to respond." *Richmond v. Coastal Bend Coll. Dist.*, 883 F. Supp. 2d 705, 713 (S.D. Tex. 2012) (citing *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003)). As to the opportunity to respond, "the Supreme Court has held that '[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.' " *Bowlby*, 681 F.3d at 220 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quotation marks and citation omitted)). "Depending on the circumstances and

the interests at stake, a fairly extensive evidentiary hearing may be constitutionally required before a legitimate claim of entitlement may be terminated." *Richmond*, 883 F. Supp. 2d at 713 (citing *Brock v. Roadway Exp., Inc.*, 481 U.S. 252, 261, 107 S. Ct. 1740, 1747, 95 L. Ed. 2d 239 (1987)). "In other circumstances, however, the Supreme Court has upheld procedures affording less than a full evidentiary hearing if some kind of hearing ensuring an effective initial check against mistaken decisions is provided before the deprivation occurs and a prompt opportunity for complete administrative and judicial review is available." *Id.* (citing *Brock*, 481 U.S. at 261–62, 107 S. Ct. at 1747).

### 3. Analysis

Having carefully considered the matter, the Court finds that the Board Members are entitled to qualified immunity. Even assuming Plaintiffs had stated viable due process claims against the Board Members, Plaintiffs have pointed to no case law demonstrating that the Board Members were objectively unreasonable in light of clearly established law under the circumstances of this case—where a revocation occurred, where a hearing was then offered after the fact, but where the hearing was allegedly biased and the outcome was predetermined. This is particularly critical when, as Defendants note, Plaintiffs plainly concede in the *Amended Complaint* that the Board "found itself in a quandary through no fault of its own." (*Am. Compl.* ¶ 45, Doc. 27.)

Again, "[a]lthough [the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question *beyond debate*." *Kisela*, 138 S. Ct. at 1152 (emphasis added, citations and quotations omitted). Without more—and Plaintiffs provided nothing[3]—Plaintiffs have not met their burden with respect to qualified immunity, and Defendants' motion must be granted.

---

[3] Indeed, Plaintiffs failed to respond completely to the Board Members' arguments about qualified immunity, and that, by itself, would warrant dismissal. *See JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La.

### D. State Law Immunity

#### 1. Parties' Arguments

Defendants also assert that they are immune from the state law claims because of La. Rev. Stat. Ann. § 9:2798.1. Defendants argue that they acted pursuant to their statutory authority and that their actions were in the course and scope of their employment, so they cannot be liable.

Plaintiffs reply that the statute at issue shields acts of negligence and decisions grounded in social, economic, or political policy. Since this decision was unrelated to public policy, the Board Members are not immune.

Defendants reply that Plaintiffs have failed to allege any facts showing that the Board Members acted with negligence.

#### 2. Applicable Law.

La. Rev. Stat. Ann. § 9:2798.1 provides in relevant part, "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. Rev. Stat. Ann. § 9:2798.1(B). Thus, officers, officials, and employees of any of Louisiana's state boards are, under certain circumstances, statutorily entitled to immunity from liability "based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts." *Id.* § 9:2798.1(A), (B).

When a defendant invokes this discretionary function immunity as an affirmative defense, a court must initially determine whether the governmental agency had a choice or discretion regarding whether to follow a particular course of action. *Johnson v. Orleans Par. Sch. Bd.,* 2006–

_____

2018) (deGravelles, J.) (finding that operative complaint could be dismissed because plaintiff failed to respond to the substance of defendant's arguments (numerous citations omitted)).

1223, p. 14 (La. App. 4 Cir. 1/30/08); 975 So. 2d 698, 709. If a statute, regulation, or policy dictated the governmental agency's action, then immunity does not apply. *Id.* at 709–10. However, if there was no prescribed duty, the defendant must then introduce evidence at trial that the choice was "grounded in 'social, economic, or political policy.' " *Id.* at 710 (quoting *Simeon v. Doe,* 618 So. 2d 848, 852–53 (La. 1993)); *see also Lambert v. Riverboat Gaming Enf't Div.,* 96–1856, p. 9–10 (La. App. 1 Cir. 12/29/97); 706 So. 2d 172, 177–78 ("[E]ven if certain of the alleged acts of misconduct . . . are discretionary acts and decisions as claimed by the defendants, we are unable to determine through the exception of no cause action whether the defense will apply herein. Even where discretion is involved, the court must determine whether the discretionary act is the kind which is 'grounded in social, economic or political policy,' a question of fact to be determined through a trial."); *Bouchereau v. Gautreaux*, No. 14-805, 2015 WL 5321285, at *15 (M.D. La. Sept. 11, 2015) (deGravelles, J.) (denying motion to dismiss and reaching same result on same ground)).

### 3. Analysis

In short, the Court will deny Defendants' motion on this issue. Even assuming it were appropriate to evaluate the "social, economic, or political policy" issue at the motion to dismiss stage (which is questionable), it is clear from the *Amended Complaint* that the Board Members' decision was not grounded on any of these policies. Thus, Defendants are not entitled to immunity under La. Rev. Stat. Ann. § 9:2798.1(B) at this time.

### E. Emotional Distress Claim

### 1. Parties' Arguments

Next, Defendants maintain the Delta cannot recover any emotional distress damages because it is a limited liability company. Thus, this claim must be dismissed. Further, Fetty fails

to adequately allege a claim for intentional infliction of emotional distress; there is no showing of extreme and outrageous conduct by the Board Members, and any emotional distress suffered by Fetty was not severe.

Plaintiffs make no response to this argument in their opposition. Defendants note this in their reply.

## 2. Analysis

In short, the motion will be granted on this issue. Preliminarily, Plaintiffs' failure to respond to the substance of Defendants' arguments constitutes abandonment of the claim, and Plaintiffs' emotional distress claim could be dismissed on this ground alone. *See JMCB*, 336 F. Supp. 3d at 634.

Even if the Court were to rule on the merits, Defendants would be entitled to the relief they seek. Defendants are correct that limited liability companies cannot sustain damages for mental anguish, *see Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, No. 07-7965, 2009 WL 86671, at *3 (E.D. La. Jan. 13, 2009) (citing *AT & T Corp. v. Columbia Gulf Transmission Co.*, No. 07-1544, 2008 WL 4585439 at *3 (W.D. La. Sept. 15, 2008)), so this claim must fall.

Moreover, Fetty's claim for emotional distress damages also fails, though not for the reasons Defendants argue. Defendants maintains that Fetty has failed to state a claim for intentional infliction of emotional distress, but it is clear from the *Amended Complaint* that Fetty does not make such a claim. Rather, this claim fails because it lacks adequate factual allegations. While plaintiffs can recover emotional distress damages for a procedural due process violation under § 1983, *see Carey v. Piphus*, 435 U.S. 247, 264, 98 S. Ct. 1042, 1052, 55 L. Ed. 2d 252 (1978), [4] and for negligent infliction of emotional distress under state law, *see, e.g., Barrino v. E.*

---

[4] As the Supreme Court said in *Carey*: "In sum, then, although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the

*Baton Rouge Par. Sch. Bd.*, 96-1824 (La. App. 1 Cir. 6/20/97); 697 So. 2d 27, 33-34,[5] here

Plaintiffs have failed to allege any facts that Fetty actually sustained emotional distress damages.

Without more, Plaintiffs have failed to state viable claims for these damages against Defendants.

### F. Punitive Damages

#### 1. Parties' Arguments

Lastly, Defendants urge that Plaintiffs have failed to state cognizable claims for punitive

damages. Such damages require that the Board Members acted in reckless disregard to Plaintiffs'

rights, but, here, Plaintiffs allege that the Board "found itself in a quandary through no fault of its

own." (Doc. 42-2 (citing *Am. Compl.* ¶ 45, Doc. 27).) Thus, this claim must be dismissed.

Plaintiffs respond that "Blache acted in reckless disregard to the rights of both Fetty and

Delta Tactical." (Doc. 45 at 10.) Plaintiffs' license was revoked without a hearing in direct

violation of Louisiana law. Plaintiffs emphasize that "Blache . . . recklessly disregarded applicable

law and denied Fetty and Delta Tactical's rights and due process of law in the revocation of the

license issued by the [Board]." (*Id.*) Plaintiffs close (sic throughout), "Thus, Fetty and Delta . . .

have stated a cause of action for punitive damages such that Blache's argue in that regard, for

dismissal is without merit." (*Id.*)

---

[5] difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused." *Id.*, 435 U.S. at 264, 98 S. Ct. at 1052. Because such damages are not presumed, if a plaintiff fails to adequately prove actual damages from a denial of procedural due process at trial, he will only be entitled to recover nominal damages. *See id.*, 435 U.S. at 266–67, 98 S. Ct. at 1054.

[5] As *Barrino* explained: "It is well established in [Louisiana] jurisprudence that a claim for negligent infliction of emotional distress unaccompanied by physical injury is viable" under La. Civ. Code art. 2315, though "this recovery has been limited to cases involving the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Id.*, 697 So. 2d at 33–34 (citations and quotations omitted).

Defendants reply that "Plaintiffs make no defense" to their arguments. (Doc. 49 at 4.) Defendants highlight that Plaintiffs focus entirely on "Blache, a separate defendant," and make no arguments against the Board Members. (*Id.* at 4–5.)

### 2. Applicable Law

Two standards of punitive damages govern this case. First, "[p]unitive damages may be awarded [under § 1983] only when the defendant's individual conduct 'is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights.' " *Bouchereau*, 2015 WL 5321285, at *13 (quoting *Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (citation omitted)). Second, as to the state law claims, "[p]unitive damages are not allowed under Louisiana law in absence of a specific statutory provision." *Golden v. Columbia Cas. Co.*, No. 13-547, 2015 WL 3650790, at *9 (M.D. La. June 11, 2015) (deGravelles, J.) (citing *Hoffpauir v. Columbia Cas. Co.*, No. 12–403, 2013 WL 5934699, at *14 (M.D. La. Nov. 5, 2013) (citing *Zaffuto v. City of Hammond*, 308 F.3d 485, 491 (5th Cir. 2002))).

### 3. Analysis

The Court will dismiss Plaintiffs' claims for punitive damages. First, Plaintiffs have asserted no viable basis for punitive damages for their state law claims, so these claims must fall. Second, the Court has already dismissed Plaintiffs' § 1983 claim, so this claim must also fall. Third, even if Plaintiffs had stated a viable § 1983 claim, the Court agrees with Defendants that Plaintiffs completely failed to oppose the substance of the Board Members' motion on this issue and instead attacked an entirely separate defendant, Fabian Blache. Thus, any punitive damage claim would be abandoned. *See JMCB*, 336 F. Supp. 3d at 634. And fourth, Plaintiffs plainly concede that the Board "found itself in a quandary through no fault of its own." (*Am. Compl.* ¶ 45,

Doc. 27.)  This allegation does not carry the requisite culpability required for an award of punitive damages.  For all these reasons, Plaintiffs' punitive damages claims are dismissed.

### G.  Leave to Amend

Lastly, the Court must address whether it will grant leave to amend the operative complaint to cure the above deficiencies.  "[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. . . . A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2019).

Here, Plaintiffs already amended the operative complaint once, and they did not formally request leave to amend.  Nevertheless, because Plaintiffs did not amend their complaint in response

to a ruling by this Court, and because of the above "wise judicial practice," the Court will grant Plaintiffs one final opportunity to amend their complaint to state viable claims against the Board Members. *See JMCB*, 336 F. Supp. 3d at 641–42 (granting leave to amend, despite strong argument against this by defendant, when amendment to plaintiff's complaint did not come in response to a ruling from the court).

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to F.R.C.P. 12(B)(5) and 12(B)(6)* (Doc. 42) filed by Defendants Ritchie Rivers, Mark A. Williams, Marian H. Pierre, Wilbert Sanders, Jr., Ector Echegoyen, Maria V. Landry, Edward Robinson, Sr., Durell P. Pellegrim, and Misty Finchum is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted in that the following claims are **DISMISSED WITHOUT PREJUDICE**: (1) Plaintiffs' § 1983 claims; (2) Plaintiffs' emotional distress claims; and (3) Plaintiffs' claims for punitive damages. In all other respects, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs shall have twenty-eight (28) days in which to amend the operative complaint to cure any of the deficiencies outlined in this or the Court's other rulings. Failure to do so will result in the dismissal of these defective claims with prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs shall either (a) serve the *Amended Complaint* within twenty-one (21) days of this ruling or (b) serve any new operative complaint within twenty-one (21) days of that pleading's filing, whichever is later.

Signed in Baton Rouge, Louisiana, on <u>January 30, 2020</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

28